## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

GARY ROLAND WELCH,       )
                                      )

           Petitioner,    )
                                      )

v.                            )       **Case No. 00-CV-0105-CVE-PJC**
                                      )

MARTY SIRMONS,[1] Warden,    )
Oklahoma State Penitentiary,    )
                                      )

           Respondent.    )

## OPINION AND ORDER

This matter comes before the Court on a 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. # 15) filed by Oklahoma death row inmate Gary Roland Welch. Petitioner, who appears through counsel, challenges his conviction and sentence in Ottawa County District Court Case No. CF-94-302. Respondent filed a response to the petition denying its allegations (Dkt. # 25). Petitioner filed a reply (Dkt. # 28), and filed supplemental authority in support of his sixth proposition (Dkt. # 34). Respondent filed a response to the supplemental authority (Dkt. # 35). The state court record has been supplied.[2] For the reasons discussed herein, the Court finds that Petitioner's request for habeas relief shall be denied.

---

[1]    The Court is aware that Marty Sirmons is the current warden of Oklahoma State Penitentiary. Pursuant to Rule 2(a), Rules Governing Section 2254 Cases and Rule 25(d)(1), Federal Rules of Civil Procedure, Warden Sirmons is hereby substituted as the respondent in this case. The Court Clerk shall be directed to note such substitution on the record.

[2]    The trial court's original record was presented in two volumes and shall be cited as (O.R. Vol. ___ at ___). The transcripts from motion hearings held on April 13, 1995, and June 2, 1995, the trial held on April 8-19, 1996, and the sentencing proceedings held on May 30, 1996, were presented chronologically in nine volumes, with pages numbered consecutively from 1 - 2259. They shall be cited as (Tr. Trans. Vol. ___ at ___).

The Court has reviewed: (1) the petition for writ of habeas corpus, response, reply, supplemental authority in support of proposition six, and response to supplemental authority; (2) nine volumes of transcripts covering motion hearings held on April 13, 1995 and June 2, 1995, jury trial proceedings held on April 8-19, 1996, and sentencing proceedings held on May 30, 1996; (3) photocopies of all documents and exhibits admitted in jury trial proceedings; (4) photocopy of four questions from the jury to the judge during deliberations; (5) original record in Ottawa County District Court Case No. CF-94-302; (6) transcript of preliminary hearing held on December 14, 1994; (7) photocopies of three typewritten victim impact statements; and (7) all other records before the Oklahoma Court of Criminal Appeals ("OCCA") which were transmitted to this Court and verified by the parties as complete for purposes of this habeas corpus proceeding (Dkt. # 30).

## BACKGROUND

### I.      Factual History

In the early evening hours of August 25, 1994, Robert Hardcastle was beaten and stabbed to death in Miami, Oklahoma. Petitioner and co-defendant Claudie Conover were charged and convicted, in separate trials, of Mr. Hardcastle's murder. Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts as found by the state court are presumed correct. Following review of the record, trial

transcripts, and the admitted exhibits, this Court finds that the factual summary[3] by the OCCA is

adequate and accurate. The Court therefore adopts the following summary as its own.[4]

> On August 25, 1994, [Conover] visited Larry Davis and his wife, Lynn, in Miami, Oklahoma. Davis lived in a duplex and the victim occupied the opposite half. When Davis admitted [Conover] to his home at approximately 5:00 p.m., Davis observed Welch's car[5] parked in front in front of the duplex. While dinner was being prepared, Davis heard "banging" noises coming from the victim's half of the duplex. Davis commented to his wife and [Conover] that he hoped the victim was "winning his wrestling match." [Conover] said something to the effect that "someone's getting a spanking over a deal."
>
> Less than five minutes later, the victim ran by Davis' window. As he passed by, the victim was overheard to say "I didn't do it," or "I didn't do anything." When the victim reached Davis' porch, Davis could see he was covered in blood. Davis thought the victim looked as though he had been in a fistfight. His face was bloody and his nose looked as though it was broken. However, Davis did not see any gaping wounds on the victim's face. The victim's hands, forearms, shoulders, and chest were smeared with blood. [Conover] and Davis started for the front door at the same time. [Conover] went through the door first, pushing the victim away. Davis remained inside the house and closed the door.
>
> The victim ran across the street to a ditch with [Conover] and Welch chasing after him. Passersby saw the victim crouched in a fetal position in the ditch with [Conover] holding him and punching him and Welch stabbing him. At one point, it looked as though [Conover] was pulling and tugging at something on the victim. [Conover] turned the victim over and repeatedly struck him in the face and upper body while Welch continued to stab and hit him. When a passerby stopped to look

---

[3]   Petitioner was tried approximately ten (10) months after co-defendant Conover. In Petitioner's direct appeal, the OCCA adopted the facts as set forth in <u>Conover v. State</u>, 933 P.2d 904 (Okla. Crim. App. 1997). <u>See</u> <u>Welch v. Oklahoma</u>, 968 P.2d 1231, 1238 (Okla. Crim. App. 1998).

[4]   Because the factual summary is taken from the OCCA's decision in co-defendant Conover's direct appeal, the term "Appellant" is frequently used to reference Claudie Conover. To avoid confusion, this Court has substituted "Conover" for "Appellant" in the summary. Petitioner is identified as "Gary Welch" or "Welch."

[5]   Although the OCCA identified the car as belonging to Welch, Petitioner testified that the car belonged to Conover, but Petitioner was driving. Tr. Trans. Vol. 8 at 1812. This possible inaccuracy in the OCCA's factual summary, however, has no bearing on the issues before this Court.

at what was going on, [Conover] yelled at him to get out of there. When the gentleman failed to leave, [Conover] ran up to the car, banged on the windows and, screaming profanities at the man, told him to get out of there, that it was none of his business. [Conover] then ran off toward Welch's car.

Welch, who had remained with the victim, picked up a bottle from the ground, broke it on the street and stabbed and slashed the victim with the broken bottle. [Conover] drove over to the scene, Welch jumped in the car and the two men drove off.

The victim managed to crawl out of the ditch to the side of the road. A police officer who had been notified of the altercation arrived at the scene. The victim, wearing only a pair of shorts twisted around one ankle, leaned up on one arm and told the officer that Gary Welch had done that to him. The victim told the officer to get Gary Welch. The victim asked for a drink of water several times and then collapsed. The victim died at the scene.

The police officer reported by radio that Gary Welch was a suspect. Shortly thereafter, [Conover] and Welch were spotted just north of Miami. Upon seeing a marked police car behind them, the men threw a knife out of the passenger window of the car and then pulled over. [Conover] exited from the driver's side while Welch occupied the passenger seat. Both men were covered in blood. [Conover] also had a few abrasions and contusions about his upper body and face. When transported to the county jail, [Conover] spontaneously said "Man, I don't know you, I just wanted a ride" to which Welch responded "Just shut up." Subsequently, a broken knife blade with blood on it was found near the scene where [Conover] and Welch had been apprehended.

A subsequent autopsy of the victim revealed multiple stab wounds, including several wounds to the face and head. The cause of death was ruled as exsanguination (bleeding to death).

Conover v. State, 933 P.2d 904, 908-09 (Okla. Crim. App. 1997). Any additional facts[6] necessary

for a determination of Petitioner's claims will be set forth in detail throughout this opinion.

---

[6]     The Court also adopts other specific factual summaries of the OCCA recited throughout this opinion. 28 U.S.C. § 2254(e)(1).

4

## II.    Procedural History

Petitioner was convicted by a jury in the District Court of Ottawa County, State of Oklahoma, Case No. CF-94-302, of First Degree Murder. He was represented at trial by attorney Joe P. Robertson. Jury selection and *voir dire* were conducted on April 8-11, 1996. The guilt phase of Petitioner's trial began on April 12, 1996, and concluded on April 18, 1996, with the announcement of the jury's verdict. The capital sentencing phase was conducted on April 19, 1996, resulting in the imposition of a sentence of death for the first degree murder count. The jury found the existence of three (3) aggravating circumstances: (1) the defendant was previously convicted of felony offenses involving the use or threat of violence to the person; (2) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and (3) the murder was especially heinous, atrocious, or cruel. Petitioner was formally sentenced by the trial judge on May 30, 1996.

Petitioner appealed his convictions and sentences to the OCCA in Case No. F-96-692. The OCCA affirmed Petitioner's first degree murder conviction and death sentence in a published decision dated October 5, 1998, and denied a rehearing on December 2, 1998. Welch, 968 P.2d 1231 (Okla. Crim. App. 1998). Petitioner's subsequent petition for writ of certiorari to the United States Supreme Court was denied on October 4, 1999. See Welch v. Oklahoma, 528 U.S. 829 (1999).

Petitioner sought post-conviction relief from the OCCA in Case No. PC-97-1486. All requested relief was denied in a published opinion dated October 23, 1998. See Welch v. Oklahoma, 972 P.2d 26 (Okla. Crim. App. 1998).

5

On February 7, 2000, Petitioner initiated the instant habeas corpus proceeding, seeking relief for constitutional violations in the following general areas: (1) defective charging document (Information); (2) admission of improper hearsay evidence; (3) prosecutorial misconduct; (4) failure of trial court to instruct on requested lesser included offenses; (5) improper victim impact evidence; (6) trial court failed to properly address jury's written questions; (7) trial court failed to give appropriate mitigation instruction; (8) errors associated with aggravating circumstances; (9) errors in second stage jury instructions; (10) ineffective assistance of counsel; (11) cumulative errors; and (12) Petitioner is or will become incompetent to be executed.

## GENERAL CONSIDERATIONS

### I.    Exhaustion

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982). With the exception of Petitioner's twelfth proposition and a part of proposition five, the Court finds that Petitioner has exhausted state remedies by presenting his claims to the OCCA in his direct appeal and post-conviction proceedings. As will be discussed in further detail below, Petitioner's proposition twelve does not present a ripe claim, so there is no issue to exhaust at this time. Also, as discussed in part V below, it would be futile to require Petitioner to return to state court to exhaust the claim in proposition five. Therefore, the exhaustion requirement is satisfied in this case.

### II.    Procedural Bar

The Supreme Court has also considered the effect of state procedural default on federal habeas review, giving strong deference to the important interests served by state procedural rules.

See, e.g., Francis v. Henderson, 425 U.S. 536 (1976). Habeas relief may be denied if a state disposed of an issue on an adequate and independent state procedural ground.   Coleman v. Thompson, 501 U.S. 722, 750 (1991). See also Romero v. Tansy, 46 F.3d 1024, 1028 (10th Cir. 1995); Brecheen v. Reynolds, 41 F.3d 1343, 1353 (10th Cir. 1994).

A state court's finding of procedural default is deemed "independent" if it is separate and distinct from federal law. Ake v. Oklahoma, 470 U.S. 68, 75 (1985); Duvall v. Reynolds, 139 F.3d 768 (10th Cir. 1998).  If the state court finding is applied "evenhandedly to all similar claims," it will

be considered "adequate."  Maes v. Thomas, 46 F.3d 979, 986 (10th Cir. 1995) (citing Hathorn v. Lovorn, 457 U.S. 255, 263 (1982)).

To overcome a procedural default, a habeas petitioner must demonstrate either: (1) cause for failure to follow the rule of procedure and actual resulting prejudice; or (2) that a fundamental miscarriage of justice would occur if the merits of the claims were not addressed in the federal habeas proceeding. Coleman, 501 U.S. at 749-50; Wainwright v. Sykes, 433 U.S. 72 (1977).

## III.    Standard of Review - AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA" or "the Act") specifically delineates the circumstances under which a federal court may grant habeas relief. Title 28, section 2254 (d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
>> (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

7

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d), this Court may grant a writ of habeas corpus only if the state court reached a conclusion opposite to that reached by the Supreme Court on a question of law, decided the case differently than the Supreme Court has decided a case with a materially indistinguishable set of facts,

or unreasonably applied the governing legal principle to the facts of Petitioner's case. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. It is not necessary, however that the state court cite to controlling Supreme Court precedent, so long as neither the reasoning nor the result of the state court decision contradicts Supreme Court law. Early v. Packer, 537 U.S. 3, 8 (2002).

Petitioner's habeas proceedings in the instant matter commenced well after the effective date of AEDPA. Although the crime for which Petitioner was convicted predates the law's enactment, the provisions of the Act govern pursuant to Lindh v. Murphy, 521 U.S. 320 (1997). Therefore, to the extent Petitioner's claims are cognizable in a federal habeas corpus proceeding, those claims shall be reviewed pursuant to § 2254(d).

## IV.   Claims relating to violations of Oklahoma state constitution are not cognizable on federal habeas corpus review

Mixed in with Petitioner's arguments are various statements that his rights have been violated under the constitution of the State of Oklahoma. It is well established that it is not the role

of a federal habeas corpus court to correct errors of state law.  Estelle v. McGuire, 502 U.S. 62 (1991). This Court will address only the federal constitutional issues involved in Petitioner's case. "Alternative state claims, whether grounded in state statutes or the State Constitution, are not cognizable under 28 U.S.C. § 2254(a)." Davis v. Reynolds, 890 F.2d 1105, 1109 n.3 (10th Cir. 1989) (citing Estes v. Texas, 381 U.S. 532, 588 (1965)).  To the extent Petitioner argues that his rights under the constitution of the State of Oklahoma have been violated, such claims are not cognizable in federal habeas corpus.  Accordingly, the Court concludes that habeas corpus relief is not available insofar as Petitioner claims his rights under the state constitution have been violated.

## CLAIMS FOR RELIEF

## I.      Defective charging document (proposition 1)

In his first claim for relief, Petitioner asserts that irregularities in the charging Information (O.R. Vol. 1 at 1-2) violated his constitutional rights under the Fifth, Eighth, and Fourteenth Amendments. More specifically, he claims that the Information failed to allege each element of the crime charged because of the inclusion of the words "with a premeditated design" rather than the statutory language "with malice aforethought." Id. at 1. Petitioner alleges that omission of the "malice aforethought" element was a fundamental error which deprived the trial court of subject matter jurisdiction. This issue was rejected by the OCCA on direct appeal. Welch, 968 P.2d at 1239. Petitioner also claims that, in denying relief on direct appeal, the OCCA's reliance on Parker v. State, 917 P.2d 980, 986 (Okla. Crim. App. 1996), was an *ex post facto* violation of the Due Process Clause and a violation of Petitioner's Equal Protection rights. In response, the Respondent declares that the Information was sufficient to confer jurisdiction on the trial court and to apprise the

Petitioner of the charges against him. Further, the state court's adjudication of this claim was not contrary to, or an unreasonable application of, Supreme Court law.

The felony Information filed against Petitioner and his co-defendant Conover stated in pertinent part:

### MURDER IN THE FIRST DEGREE
Title 21 - 701.7

. . . That said defendants, on the day and year aforesaid, in the County and State aforesaid, while acting in concert, each with the other, did unlawfully, willfully and feloniously, without authority of law, and with a premeditated design to effect the death of one Robert Hardcastle, a human being, did then and there kill one Robert Hardcastle by means of a knife having a sharp and pointed blade, and a broken bottle which was sharp, with which the said defendants did cut, slash and stab the body of the said Robert Hardcastle, causing mortal wounds in the body of the said Robert Hardcastle from which mortal wounds the said Robert Hardcastle did languish and die, contrary to the form of the statutes in such case made and provided, and against the peace and dignity of the State of Oklahoma.

See O.R. Vol. 1 at 1. Citing its earlier decision in co-defendant Conover's direct appeal, the OCCA found that the Information "sufficiently provided notice of the charge against the defendant and apprised him of what he must defend against at trial." Welch, 968 P.2d at 1239 (citing Conover, 933 P.2d at 909-10).

First, to the extent Petitioner is challenging the sufficiency of the Information for purposes of establishing trial court jurisdiction under state law, this Court is not empowered to correct a possible error of state law. Johnson v. Gibson, 169 F.3d 1239, 1252 (10th Cir. 1999) (noting that a challenge to the adequacy of an information under Oklahoma law is a question of state law). Insofar as Petitioner asserts a violation of his rights under the United States Constitution, the Tenth Circuit Court of Appeals has previously rejected a similar challenge to the use of the words "premeditated design" rather than "with malice aforethought." See Sallahdin v. Gibson, 275 F.3d 1211 (10th Cir.

10

2002). Mr. Sallahdin also argued that the State violated his due process rights because the Information improperly failed to allege malice aforethought. Id. at 1226. Finding that Mr. Sallahdin received constitutionally adequate notice of the charge against him because the specific intent element of first degree murder was sufficiently alleged, the Tenth Circuit Court determined:

> In Oklahoma, an Information must contain "[a] statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended." Okla. Stat. tit. 22, § 401(2). A challenge to the adequacy of the Information under Oklahoma law, however, is a question of state law, which this court has no power to address. Johnson v. Gibson, 169 F.3d 1239, 1252 (10th Cir.), cert denied, 528 U.S. 972, 120 S.Ct. 415, 145 L.Ed.2d 324 (1999). Rather, this court may grant habeas relief only if the state court error deprived the defendant of fundamental rights guaranteed by the Constitution. Id. An Information may violate the Sixth Amendment by failing to provide adequate notice of the nature and cause of the accusations against the defendant. Id.; see also Hamling v. United States, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) (providing indictment is sufficient if it contains elements of the charged offense, fairly informs defendant of charge against which he must defend and allows the defendant to bar future prosecutions for the same offense).

Sallahdin, 275 F.3d at 1227. The Circuit Court concluded that Mr. Sallahdin received sufficient notice of the charge against him. Id. at 1227-28. In Petitioner's case, as in Sallahdin, the "specific intent element of first degree murder was sufficiently alleged by use of the words 'premeditated design.'" Id. at 1227. Accordingly, the OCCA's determination that Petitioner was sufficiently apprised of the charges against him, despite any irregularity in the language of the Information, was not contrary to, or an unreasonable application of, Supreme Court law.

In the Sallahdin decision, the Tenth Circuit Court of Appeals also addressed an *ex post facto* challenge to the OCCA's application of Parker.

> *Ex Post Facto*--Sallahdin also argues that application of Parker violates ex post facto prohibitions because, in his view, Parker's overruling of Miller v. State, 827 P.2d 875, 879 (Okla. Crim. App. 1992) was unforeseeable and indefensible. Whether an *ex post facto* violation has occurred presents a question of law. *Cf.* Lustgarden v. Gunter, 966 F.2d 552, 553 (10th Cir. 1992). "To fall within the ex post

facto prohibition, a law must be retrospective-that is, it must apply to events occurring before its enactment-and it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 519 U.S. 433, 441, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997) (quotations and citations omitted). Although "[t]he Ex Post Facto Clause is a limitation upon the powers of the Legislature and does not of its own force apply to the Judicial Branch of government," Marks v. United States, 430 U.S. 188, 191, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (citation omitted), the Supreme Court has recognized that "limitations on *ex post facto* judicial decisionmaking are inherent in the notion of due process." Rogers v. Tennessee, 532 U.S. 451, 121 S.Ct. 1693, 1697, 149 L.Ed.2d 697 (2001). We therefore proceed to analyze Sallahdin's claim in the context of the Due Process Clause.

We fail to see any due process problem arising out of the application of Parker to Sallahdin's case. To begin with, we note that the decision in Parker had nothing "to do with the definition of crimes, defenses, or punishments." Collins v. Youngblood, 497 U.S. 37, 51, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). Instead, it addressed an issue of state criminal procedure, announcing that an information need not allege each element of a charged crime, and that a trial court's subject matter jurisdiction is not dependent upon an information containing each element of the charged crime. Thus, Parker does not fall within the scope of what could even remotely be described as *ex post facto* judicial decisionmaking. *See* Collins, 497 U.S. at 45, 110 S.Ct. 2715.

Even if we were to conclude otherwise, it is apparent after reviewing Oklahoma case law that the decision in Parker was foreseeable and defensible. *See* Fultz v. Embry, 158 F.3d 1101, 1103 (10th Cir. 1998) (discussing the test for determining whether the retroactive application of a judicial decision violates due process).

Sallahdin, 275 F.3d at 1228-29. After a discussion of the history of evolving changes in Oklahoma case law and the "divergence of opinion on the issue [of the sufficiency of indictments and informations] among members of the Oklahoma Court of Criminal Appeals," the Circuit Court concluded that it was "not at all unforeseeable that the court attempt to reconcile its case law in Parker." Id. at 1229. Further, "[T]he decision in Parker is entirely consistent with the language of the Oklahoma statutes governing the requirements for an information." Id. (citing Miles v. State, 922 P.2d 629, 631 (Okla. Crim. App. 1996) (rejecting identical *ex post facto* attack on Parker)).

12

In the case at hand, Petitioner's *ex post facto* arguments are substantially the same as those considered and rejected in Sallahdin. He urges that the trial court lacked jurisdiction because of the defective information, and that the OCCA's reliance on Parker in denying relief was an *ex post facto* violation. As noted above, to the extent Petitioner challenges the jurisdiction of the trial court, this Court finds the claim raises an issue of interpretation of state law and, as such, is not cognizable under § 2254. See Tyrell v. Crouse, 422 F.2d 852 (10th Cir. 1970); see also Poe v. Caspari, 39 F.3d 204, 207 (8th Cir. 1994) (stating that "[j]urisdiction is no exception to the general rule that federal courts will not engage in collateral review of state court decisions based on state law: 'The adequacy of an information is primarily a question of state law and we are bound by a state court's conclusion respecting jurisdiction.'" (citations omitted)).   Further, relying upon the reasoning set forth in Sallahdin, this Court finds that Petitioner is not entitled to habeas relief on those portions of his first proposition challenging the decision of the OCCA on *ex post facto* and due process grounds.

The only remaining issue in proposition one is whether the OCCA's denial of Petitioner's claim resulted in a violation of the Equal Protection Clause of the United States Constitution. Petitioner complains that, in cases dealing with less important issues, the OCCA has not applied new law retroactively. He also asserts that the OCCA's application of Parker was not consistently applied because other defendants' convictions were overturned on  grounds of defective charging documents. Dkt. # 15 at 36. Petitioner has not met his burden in establishing an equal protection violation. He has failed to demonstrate that he was a member of a suspect class or that a fundamental right was at issue for equal protection analysis. He has not established that the distinction between himself and others was not reasonably related to a legitimate state purpose. Templeman v. Gunter, 16 F.3d 367, 371 (10th Cir. 1994). This Court cannot find an equal protection violation in the

13

OCCA's reliance on <u>Parker</u> to deny Petitioner's claim related to the Information. Petitioner is not entitled to habeas relief on this issue.

## II.        Improper hearsay evidence (proposition 2)

In his second proposition of error, Petitioner contends that the trial court violated his constitutional rights when it allowed Larry Davis to testify about a comment made by co-defendant Conover.[7] Petitioner's claim encompasses two subsidiary claims of prejudice. First, he alleges that the trial court's erroneous ruling that Conover's statement could be admitted under the co-conspirator exception to the hearsay rule bolstered the prosecution's theory of pre-meditation in the first stage of trial. Dkt. # 15 at 44. Second, he contends that admission of Conover's statement deprived him of a reliable sentencing determination under the Fifth, Eighth, and Fourteenth Amendments because it undermined his self-defense argument. <u>Id.</u> at 46.

Petitioner first raised this issue on direct appeal. The OCCA found that the trial court erred in admitting Davis' statement under the co-conspirator exception to hearsay rules.

> In his first assignment of error, Appellant contends he was denied a fair trial by the improper admission of hearsay testimony. Larry Davis testified at trial that while he and co-defendant Conover were visiting, they heard "banging" noises coming from the victim's half of the duplex. Davis testified that he commented to his wife and Conover that he hoped the victim was "winning his wrestling match." Conover said something to the effect that "someone's getting a spanking over a deal." The State sought to admit Conover's statement as that of a co-conspirator under 12 O.S. 1991, 2801(4)(b). The trial court initially sustained Appellant's objection finding the evidence insufficient to support the existence of a conspiracy. The State reserved the right to recall the witness after it had established the existence of the conspiracy. (Tr. Vol. 5, pp. 1162-64). Near the end of its case-in-chief, the State again attempted to

---

[7]        At issue is Mr. Davis' statement, "What Claudie said, as I recall the best I could, was that I shouldn't -- it was probably a spanking over a deal or something like that somebody's probably getting a spanking. His response to my comments about the wrestling noises that I heard was: I wouldn't worry about it, somebody's probably getting a spanking over a deal." <u>See</u> Tr. Trans. Vol. 7 at 1563.

> introduce the statement. This time the court admitted the statement and overruled Appellant's objections finding the existence of a conspiracy had been established and that the statement was made during and in furtherance of the conspiracy.
>
> Now on appeal, Appellant asserts the trial court ruling was error as the evidence did not support the finding of a conspiracy. We agree.

Welch, 968 P.2d at 1239. Upon further analysis, the OCCA concluded that the error was harmless because Davis' statement was admissible as a present sense impression.

> However, we do not find the statement itself inadmissible. Under 21 O.S.1991, 2803(1) a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter is exempted from the hearsay prohibition and is admissible as a present sense impression. Conover's statement was made immediately upon hearing the noise coming from next door and offered an explanation for that noise. Therefore, any error in admitting the statement under the co-conspirator exception was harmless as the statement was properly admissible as a present sense impression. Further, as the comment falls under a well established exception to the hearsay rule, there was no violation of Appellant's right of confrontation. Accordingly, this assignment of error is denied.

Id. at 1240.

Petitioner asserts that the OCCA's finding was an unreasonable application of Supreme Court law set forth in Bourjaily v. United States, 483 U.S. 171 (1987). Dkt. # 15 at 38. Bourjaily established guidelines to be used by courts considering whether a statement may be admitted under the co-conspirator exception to hearsay rules. Petitioner admits that the OCCA determined that the statements in question were not made during and in furtherance of a conspiracy as required by Bourjaily. Dkt. # 15 at 38. The OCCA agreed with Petitioner's argument that the trial court improperly allowed the statement in under the co-conspirator hearsay exception.  Because the OCCA found the trial court's reliance on the co-conspirator exception to be in error, this Court cannot find that the OCCA's ruling was an unreasonable application of Bourjaily.

15

The state appellate court additionally found that the trial court's error was harmless because the testimony was admissible under the "present sense impression " exception to the hearsay rule. Welch, 968 P.2d at 1239-40.  Petitioner challenges both the OCCA's finding that the statement was admissible as a "present sense impression" and that its admission was harmless error. He claims the admission of the allegedly improper hearsay statement violated his right to confront witnesses against him and his right to a fair trial.

*Confrontation Clause challenge*

Petitioner alleges a Confrontation Clause violation. The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant "the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. According to Ohio v. Roberts, 448 U.S. 56 (1980), the right does not bar admission of an unavailable[8] witness's statement against a criminal defendant if the statement bears "adequate indicia of reliability." Id. at 66.  A "firmly rooted hearsay exception" meets the test of reliability. Id. The Supreme Court overruled Roberts and refined its rule for analyzing challenges based on the Confrontation Clause in Crawford v. Washington, 541 U.S. 36 (2004). However, the Supreme Court has determined that the new rule announced in the Crawford decision should not be applied retroactively. Whorton v. Bockting, --U.S.--, 127 S.Ct. 1173, 1184 (2007). Because Petitioner's conviction became final well before Crawford was decided, the governing precedent is Roberts. See Brown v. Uphoff, 381 F.3d 1219, 1224 n.4 (10th Cir. 2004) (noting the court must look at Supreme Court precedent as it existed when the state court reached its decision).

---

[8]    Claudie Conover was subpoenaed to testify (O.R. Vol. 2 at 338-40), but refused, invoking his Fifth Amendment right to remain silent. Tr. Trans. Vol. 7 at 1539-43.

Accordingly, in this case, the Court's inquiry is focused on whether the statement bears "adequate indicia of reliability." Roberts, 448 U.S. at 66. Here, the OCCA relied on a "firmly rooted hearsay exception" under Oklahoma law, i.e., the "present sense impression" exception. Welch, 968 P.2d at 1240. Thus, the OCCA's ruling with respect to the "getting a spanking" reference in Davis' testimony was neither contrary to, nor an unreasonable application of, controlling Supreme Court precedent. Accordingly, this Court does not find a Confrontation Clause violation in the admission of Larry Davis' testimony regarding Conover's "getting a spanking" comment.

*Due process challenge*

Mr. Welch also asserts that the admission of the challenged testimony violated his rights under the Due Process Clause. Petitioner's claim challenging the admission of Conover's statement, whether as a "present sense impression" or a co-conspirator statement, raises a state evidentiary question. Evidentiary rulings cannot serve as the basis for habeas corpus relief unless the ruling rendered Petitioner's trial fundamentally unfair resulting in a violation of due process. Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002). Consequently, Petitioner must demonstrate that the admission of the statement in question rendered his trial fundamentally unfair. He has failed to do so. This Court does not accept Petitioner's argument that Conover's statement was the only link to the prosecution's theory that the homicide was premeditated and planned. Nor does this Court find the statement carried such prejudicial import with the jury that it resulted in an unfair guilty verdict.

Assuming, for purposes of argument, that Conover's statement were improperly admitted as hearsay, Petitioner is "not entitled to habeas relief based on trial error unless [he] can establish that it resulted in 'actual prejudice.'" Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). Petitioner argues that the standard set forth in Chapman v. California, 386 U.S. 18 (1967), requires this Court

17

to set aside his conviction and sentence because the State cannot show beyond a reasonable doubt that the error complained of did not contribute to Petitioner's guilty verdict. See Dkt. # 28 at 22. The Brecht decision, however, rejected use of the Chapman standard in habeas corpus cases. The question whether the improper admission of hearsay evidence at Petitioner's trial was harmless error must be answered by determining whether the evidence had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 638; see also McCracken v. Gibson, 268 F.3d 970 (10th Cir. 2001). The Brecht standard used in habeas collateral review proceedings originated in Kotteakos v. United States, 328 U.S. 750 (1946):

> The test under Kotteakos is whether the error "had substantial and injurious effect or influence in determining the jury's verdict." 328 U.S. at 776, 66 S.Ct. at 1253. Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in "actual prejudice." See United States v. Lane, 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L. Ed. 2d 814 (1986). The Kotteakos standard is thus better tailored to the nature and purpose of collateral review and more likely to promote the considerations underlying our recent habeas cases. Moreover, because the Kotteakos standard is grounded in the federal harmless-error rule 28 U.S.C. § 2111, federal courts may turn to an existing body of case law in applying it. . . .
>
> For the foregoing reasons, then, we hold that the Kotteakos harmless-error standard applies in determining whether habeas relief must be granted because of constitutional error of the trial type.

Brecht, 507 U.S. at 637-38. Accordingly, this Court's inquiry is limited to analyzing whether, in light of the record as a whole, the admission of the Conover statement had a substantial and injurious effect or influence in determining the jury's verdict. Id. at 638. This Court concludes that the admission of the statement, "somebody's probably getting a spanking over a deal," did not have such effect or influence on the jury's verdict.

An analysis of the evidence presented at trial reveals that the prosecution established that before going to the victim's house Petitioner threatened Johnny Rogers and Stephen St. John with a knife because they could not provide drugs demanded by Petitioner.[9] Tr. Trans. Vol. 5 at 1116-22. Conover and Welch drove to Larry Davis' duplex.[10] While Conover visited with Mr. and Mrs. Davis, Petitioner went to see the victim. Tr. Trans. Vol. 8 at 1817. Mr. Davis testified that he heard loud noises like a "wrestling match" coming from the victim's kitchen. Tr. Trans. Vol. 5 at 1165. Mr. Davis further testified that, after a few minutes had passed, he saw the victim run past the window yelling "I didn't do it or I don't have any, or some type of denial, something to say I didn't do it, or I don't have, or something of that nature." Id. Hardcastle was bloody as if he had been in a fight. Id. Conover went out the front door and Mr. Davis stayed inside with his wife. Id. at 1171. Neighbors Reba Guilford, Mr. and Mrs. Nading, Dale Hurst and Rachelle Campbell each testified about events they witnessed in the street and yard as the fatal knife fight took place. The victim was stabbed multiple times with Petitioner's knife and a broken beer bottle before he collapsed and died. Several witnesses identified Petitioner as the one who stabbed the victim. There was substantial evidence of Petitioner's guilt, and this Court finds that the admission of the statement in question did not have a substantial and injurious effect or influence in determining the jury's verdict. Further, the Court cannot find that the statement undermined Petitioner's theory of self-defense or deprived

---

[9]     Mr. St. John testified that Gary Welch was standing about a foot and a half away from Mr. Rogers, pointing a knife at him and demanding, "Give me a Goddamned bump." Petitioner also pointed the knife at St. John and ordered him to "look the other way, mother fucker." St. John further testified that he was so scared he went home and armed himself with a gun. Tr. Trans. Vol. 5 at 1120-22.

[10]    Mr. Davis testified that the house owned by the victim, Bob Hardcastle, had been divided into a duplex. Davis and his wife rented the front part. The victim lived in the other part. Tr. Trans. Vol. 5 at 1153.

him of a reliable sentencing determination. The Court concludes that even if the challenged testimony were erroneously admitted, the error was harmless.

Accordingly, Petitioner has not established a due process violation. He is not entitled to habeas corpus relief on this issue.

## III.    Prosecutorial misconduct (propositions 3, 7)

In proposition three, Petitioner challenges the prosecutor's questions and comments relating to Petitioner's post-arrest silence.  He argues the comments were unconstitutional in violation of Doyle v. Ohio, 426 U.S. 610 (1976), and denied him a fair trial. The allegation that the prosecutor improperly questioned Petitioner during cross-examination was first raised on direct appeal, and rejected by the OCCA as harmless error. Welch, 968 P.2d at 1240-41. Petitioner's challenge to the prosecutor's remarks made during first stage closing arguments was raised in post-conviction proceedings and rejected by the OCCA on procedural grounds.[11] Welch v. Oklahoma, 972 P.2d 26, 29 (Okla. Crim. App. 1998).

*Cross examination regarding silence*

Petitioner testified at trial that he acted in self-defense. Tr. Trans. Vol. 8 at 1832-56. His attorney asked the following introductory questions on direct examination:

---

[11]    Petitioner challenged only the prosecution's cross-examination references to Petitioner's silence in his direct appeal brief. See Brief of Appellant at 19-22, in OCCA Case No. F-96-692. He challenged the prosecution's closing argument remarks in post-conviction proceedings. See Application for Post-Conviction Relief at 26-28, in OCCA Case No. PC-97-1486. Nonetheless, the OCCA denied relief on post-conviction stating that the issue was *res judicata,* and noting that, "The issue of the prosecutor's comment on Petitioner's right to post-arrest silence was raised on direct appeal." Welch v. Oklahoma, 972 P.2d 26, 29 n.3 (Okla. Crim. App. 1998)

QUESTION:   Gary, during the State's presentation of their case, multiple police officers, who worked on this case, testified and you've been here throughout that presentation, have you not?

ANSWER:   Yes, sir.

QUESTION:   And I asked each and every one of them whenever they testified if they ever asked you any questions or asked you what happened, and each of them said they had not. Is that right?

ANSWER:   No -- yes, sir, they did not.

QUESTION:   Have you ever been asked your version of what happened by anybody in law enforcement?

ANSWER:   No, sir, I haven't.

QUESTION:   And this case was formulated without your story ever being told or ever being requested, is that correct?

ANSWER:   Yes, sir. I never had a chance to tell any of my side of the story. I've been waiting almost two years to be able to, you know, to tell what happen [sic].

Id. at 1794. Petitioner then testified about the events that led up to the death of Mr. Hardcastle.

Toward the end of direct examination, Petitioner's attorney again broached the subject of Petitioner's silence prior to trial.

QUESTION:   Did any of the officers come to you that night in the holding cell or up in the jail and ask you, Gary, we want to give you your chance to tell what happened out there?

ANSWER:   No, sir.

QUESTION:   Did any of them come the next day and ask you?

ANSWER:   No, sir.

QUESTION:   Gary, we want to know your side of what happened out there?

ANSWER:   No, sir.

21

QUESTION:   Has there been any point in time when any of these officers that conducted this year and a half long investigation ever asked you, or to your knowledge, your attorney's, what happened out there?

ANSWER:   No, sir.

Id. at 1854.

On cross-examination the prosecutor elicited further details from Petitioner regarding his version of the events. Questioning Petitioner about his memory upon arrival at the Ottawa County Jail, the prosecutor asked:

QUESTION:   Do you recall when you were brought to the Ottawa County Jail being asked about the need for medical treatment?

ANSWER:   I said -- no, I don't. I don't remember. I don't recall.

QUESTION:   And if you don't recall being asked that, do you recall -- would it be fair to say you don't recall what the response was?

ANSWER:   Really, I -- it's hard for me to even remember a whole lot of what was going during that time. I remember I was -- I was in and out, you know. I remember falling -- I remember falling off a chair. I -- it's just all -- I just don't recall.

QUESTION:   You don't recall that, but you specifically recall that nobody asked you if you wanted to make a statement about what happened?

ANSWER:   No, nobody ever asked me to make a statement or asked me anything that I know of.

QUESTION:   Okay. Now you are also aware, are you not, that Claudie Conover has been to trial for his involvement in this entire event?

ANSWER:   Yes, he has.

QUESTION:   And you are also aware that he was charged with first degree murder?

ANSWER:   Yes, sir.

QUESTION:   And you were subpoenaed as a witness for him in that case, were you not?

22

ANSWER:     Yes, sir. I believe so.

QUESTION:   Did you come forward in that case and testify as to what transpired to help your buddy out?

ANSWER:     No, sir, I did not.

Id. at 1925-26. No objection was made to this line of questioning.

On redirect examination, Petitioner's counsel asked, "Even though they subpoenaed, Welch, they never called you in to testify did they?" Id. at 1926. Petitioner responded, "No, sir." Id. at 1927. Citing Doyle v. Ohio, 426 U.S. 610 (1976), Petitioner now claims that the prosecutor's question regarding Petitioner's failure to come forward and testify in Conover's case was a violation of his constitutional rights.

In denying relief on direct appeal, the OCCA found that the prosecutor's question was a violation of Petitioner's due process rights under the Constitution. The state appellate court relied on its previous decision in Wood v. State, 748 P.2d 523 (Okla. Crim. App. 1987), which, in turn, relied upon Doyle. Although agreeing with Petitioner that there was constitutional error, the OCCA further determined that the error was harmless beyond a reasonable doubt. Welch, 968 P.2d at 1241.

Appellant testified on re-direct that he was subpoenaed to testify at Conover's trial but was never called to testify. Considering that testimony and the substantial evidence of Appellant's guilt, we conclude the error was harmless beyond a reasonable doubt. Accordingly, this assignment of error is denied.

Id. at 1240-41. Petitioner asserts that this conclusion was an unreasonable application of Supreme Court law as set forth in Doyle. He also argues that the OCCA's harmless error analysis was not proper because the OCCA did not analyze Doyle or Wood, or attempt to compare and contrast the decisions. Dkt. # 28 at 24.

23

The OCCA reached its decision on this merits of this issue, even though the court failed to mention the federal basis for its harmless error analysis. Therefore, this Court will conduct an independent review of the record and applicable federal law to ascertain whether the state court's denial of relief on this issue was "contrary to, or involved an unreasonable application of, clearly established federal law" under AEDPA. See 28 U.S.C. § 2254(d); Aycox v. Little, 196 F.3d 1174, 1177-78 (10th Cir. 1999) (OCCA's decision still entitled to deference under § 2254(d) even though federal court must conduct an independent review and articulate an appropriate rationale for OCCA's decision). Although no federal law was cited, the OCCA clearly used the "harmless beyond a reasonable doubt" standard articulated in Chapman v. California, 386 U.S. 18, 24 (1967). Accordingly, this Court must decide whether the state court's finding of harmless error was contrary to, or an unreasonable application of, Chapman. 28 U.S.C. § 2254(d); Spears v. Mullin, 343 F.3d 1215, 1233 n.14 (10th Cir. 2003); Willingham v. Mullin, 296 F.3d 917, 927 n.4 (10th Cir. 2002).

The Tenth Circuit Court of Appeals has identified five factors which are relevant to determining whether prosecutorial comments regarding post-arrest silence are harmless error:

1. The use to which the prosecution puts the postarrest silence.
2. Who elected to pursue the line of questioning.
3. The quantum of other evidence indicative of guilt.
4. The intensity and frequency of the reference.
5. The availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions.

United States v. Massey, 687 F.2d 1348, 1353 (10th Cir. 1982); see also United States v. Remigo, 767 F.2d 730, 735 (10th Cir. 1985); Sallahdin v. Gibson, 275 F.3d 1211, 1230-31 (10th Cir. 2002) (observing that the first and third inquiries are the most important). In Petitioner's case, defense counsel initiated the line of questioning regarding Petitioner's silence to demonstrate that he had not had a chance to tell his side of the story before trial. Tr. Trans. Vol. 8 at 1794, 1854. The prosecution

then attempted to impeach Petitioner's testimony by asking if he had told his story during co-defendant Conover's trial. Id. at 1925-26. There was no intensive questioning of Petitioner on his silence as in the Doyle case. The prosecutor simply asked one question about this issue. Petitioner's counsel did not object to the question, but sought a follow-up explanation from Petitioner on re-direct. Id. at 1927. Finally, there was substantial other evidence "indicative of guilt" presented at trial. Petitioner provided a detailed explanation of his version of events, but the jury obviously found his story not credible. After carefully reviewing the record, this Court is convinced that the error was harmless. The OCCA's decision was not an unreasonable application of Supreme Court law. 28 U.S.C. § 2254(d). Habeas relief shall be denied on this portion of proposition three.

<em>Closing argument reference to Petitioner's silence</em>

Petitioner next claims that the prosecutor compounded the impact of this error when the following statement was made in first stage closing argument:

> Counsel talked about Mr. Welch not having the opportunity to -- not being given the opportunity to tell his story. Well, the officer, I believe it was Smith, told you that when he was in the jail he was belligerent, he was refusing medical treatment, and I suppose you have all heard about the Fifth Amendment. You know we cannot make anybody make a statement.

Tr. Trans. Vol. 9 at 2002-03. Defense counsel objected to the prosecutor's Fifth Amendment reference. Id. at 2003. The trial judge agreed that it would be improper for the prosecutor to comment further on Fifth Amendment privileges, but overruled defense counsel's objection and motion for a mistrial. Id. at 2004.

This specific instance of alleged prosecutorial misconduct was first raised by Petitioner in his post-conviction proceedings. The OCCA summarily dismissed it as *res judicata*: "The issue of the prosecutor's comment on Petitioner's right to post-arrest silence was raised on direct appeal."

Welch v. Oklahoma, 972 P.2d 26, 29 n.3 (Okla. Crim. App. 1998). Respondent asserts that Petitioner is procedurally barred from having this claim reviewed on the merits in this habeas corpus proceeding. Although Petitioner acknowledges that this claim was raised for the first time in his application for post-conviction relief (Dkt. # 15 at 50), he provides no argument or explanation in reply to Respondent's procedural bar argument. The Court agrees with Respondent. The OCCA's procedural bar as applied to this prosecutorial misconduct claim was an "independent" state ground because "it was the exclusive basis for the state court's holding." Maes v. Thomas, 46 F.3d 979, 986 (10th Cir. 1995). Further, the state court finding is "adequate" because it is applied "evenhandedly to all similar claims." Id. (citing Hathorn v. Lovorn, 457 U.S. 255, 263 (1982)).

A petitioner may overcome the procedural default by demonstrating either: (1) cause for failure to follow the rule of procedure and actual resulting prejudice; or (2) that a fundamental miscarriage of justice would occur if the merits of the claims were not addressed in the federal habeas proceeding. Coleman v. Thompson, 501 U.S. 722, 749-50 (1991). Mr. Welch has neither asserted cause and prejudice excusing this default, nor suggested that failure of this Court to review the merits of his claim will result in a fundamental miscarriage of justice. Accordingly, this Court finds that the Petitioner is now procedurally barred from raising the prosecutorial misconduct issue insofar as it relates to the comments made by the prosecutor in closing argument.

*Comments during voir dire*

In proposition seven,[12] Petitioner alleges the prosecutor improperly asked prospective jurors during *voir dire* if a history of alcohol and drug abuse, and a deprived and turbulent background,

---

[12]     The allegations in proposition seven relate to Petitioner's claims of constitutional violations concerning mitigation. This claim of prosecutorial misconduct was not included in proposition three dealing with prosecutorial misconduct issues.

would justify a sentence of less than death. Dkt. # 15 at 105. He asserts this error compounded the alleged error of the trial court in denying a jury instruction on specific mitigating circumstances. Id. at 105-06. Petitioner admits that this issue should have been raised on direct appeal but was not. Id. In its opinion denying post-conviction relief, the OCCA indicated that prosecutorial misconduct was raised on direct appeal so further consideration was barred by *res judicata*. Welch, 972 P.2d at 29 n.2. Recognizing the procedural default, Petitioner asserts that his appellate counsel provided constitutionally ineffective assistance in failing to raise the claim on direct appeal. It is well established that, in certain circumstances, appellate counsel's ineffectiveness can constitute "cause" sufficient to excuse a state prisoner's procedural default. Murray v. Carrier, 477 U.S. 478, 488-89 (1986). However, the assistance provided by appellate counsel must rise to the level of a constitutional violation. Id. Furthermore, the ineffective assistance of appellate counsel claim asserted as "cause" must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. Id. at 489. In this case, the claim identified by Petitioner on post-conviction appeal did include a claim that appellate counsel provided ineffective assistance in failing to raise the challenge to prosecutorial misconduct on direct appeal. See Application for Post-Conviction Relief, Case No. PC-97-1486, Appendix 1 at 25.

In evaluating Petitioner's claim of ineffective assistance of appellate counsel as raised in the instant action, the Court applies the Strickland two-pronged standard used for claims of ineffective assistance of trial counsel. See United States v. Cook, 45 F.3d 388, 392 (10th Cir.1995). The Strickland test requires a showing of both deficient performance by counsel and prejudice to Petitioner as a result of the deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984). When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance

by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999).  If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance.  Id.; see also Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir.1998) (citing Cook, 45 F.3d at 392-93). If the issue has merit, the Court then must determine whether counsel's failure to raise the claim on direct appeal was deficient and prejudicial.  Hawkins, 185 F.3d at 1152; see also Cook, 45 F.3d at 394. The relevant questions for assessing Petitioner's claim of ineffective assistance of appellate counsel are whether appellate counsel was "objectively unreasonable" in failing to raise the omitted claims on appeal and, if so, whether there is a "reasonable probability that, but for his counsel's unreasonable failure" to raise the claims, Petitioner "would have prevailed on his appeal."  Neill v. Gibson, 278 F.3d 1044, 1057 (10th Cir. 2001) (citing Smith v. Robbins, 528 U.S. 259, 285-86 (2000) (applying Strickland, 466 U.S. at 687-91)).

In this case, the Court finds Petitioner has failed to establish that appellate counsel performed deficiently in omitting a meritorious issue. Petitioner asserts that the prosecutor unconstitutionally asked prospective jurors if a history of alcohol and drug abuse, and a deprived and turbulent background, would justify a sentence of less than death if the jurors believed death an appropriate penalty.  Relying on Penry v. Lynaugh, 492 U.S. 302, 327 (1989) (overruled on other grounds by Atkins v. Virginia, 536 U.S. 304 (2002)), for the proposition that the State cannot narrow a sentencer's discretion to consider relevant evidence that might cause it to decline to impose the death sentence, Petitioner argues that the prosecutor's questions were unconstitutional. Dkt. # 15 at 106. The Penry Court, however, found that the defendant's jury was not provided with "a vehicle for expressing its 'reasoned moral response'" because of the absence of instructions informing the

28

jury that it could consider and give effect to mitigating evidence. Penry, 492 U.S. at 320, 328. In this case, Petitioner's jury was specifically instructed to consider mitigating evidence before imposing the death sentence. See Instruction Nos. 7, 8. O.R. Vol. 2 at 432-33. The jury was also specifically instructed, "In arriving at your determination as to what sentence is appropriate under the law, you are authorized to consider only evidence received here in open court presented by the state and the defendant during the sentencing phase of this proceeding." Instruction No. 12, O.R. Vol. 2 at 437. The jury is presumed to follow its instructions. Weeks v. Angelone, 528 U.S. 225, 234 (2000) (citing Richardson v. Marsh, 481 U.S. 200 (1987)). The Court finds there is no reasonable probability that Petitioner would have prevailed on direct appeal had appellate counsel presented the prosecutorial misconduct argument presently urged by Petitioner. The Court concludes that Petitioner has failed to satisfy the Strickland standard. As a result, his ineffective assistance of appellate counsel claim does not excuse the procedural default.

The fundamental miscarriage of justice exception to the doctrine of procedural bar is applicable only when a petitioner asserts a claim of actual innocence. Herrera v. Collins, 506 U.S. 390, 403-404 (1993); Sawyer v. Whitley, 505 U.S. 333, 339-341 (1992); see also Schlup v. Delo, 513 U.S. 298 (1995). Under Schlup, a showing of innocence sufficient to allow consideration of procedurally barred claims must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error . . . ." Id. at 316. Petitioner has the burden of persuading this Court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Id. at 329. Petitioner in this case does not assert a fundamental miscarriage of justice.

Therefore, the Court finds that Petitioner has failed to demonstrate that he is entitled to the fundamental miscarriage of justice exception to the procedural bar doctrine.

As a result of Petitioner's failure to demonstrate either "cause and prejudice" or that a fundamental miscarriage of justice would occur if his claim is not considered, this Court is procedurally barred from considering Petitioner's prosecutorial misconduct claim set forth in his proposition seven.

**IV.    Failure to instruct on lesser included offenses (proposition 4)**

Petitioner next argues that the trial court erred in failing to instruct on the lesser included offenses of second degree murder and heat of passion manslaughter, resulting in a violation of his rights under the Sixth, Eighth, and Fourteenth Amendments to the Constitution. Petitioner contends that the lesser included offense instructions were warranted because there was no evidence that Petitioner intended to kill the victim, Robert Hardcastle.  In response, the Respondent declares that the OCCA's rejection of this claim was not contrary to established federal law as determined by the Supreme Court.

The Due Process Clause of the Fourteenth Amendment ensures that "a sentence of death [may not] . . . be imposed after a jury verdict of guilt of a capital offense, when the jury was not permitted to consider a verdict of guilt of a lesser included non-capital offense, and when the evidence would have supported such a verdict." Beck v. Alabama, 447 U.S. 625, 627 (1980). However, due process does not require the jury to be instructed on every non-capital lesser included offense supported by the evidence. Schad v. Arizona, 501 U.S. 624, 646 (1991) (explaining fundamental concern of Beck was to provide alternative for jury if only choices were capital punishment or set defendant free).  A jury may not be presented with an "all-or-nothing" decision when the evidence

presents a third option. Id. As in Schad, the central concern of Beck is not implicated in the instant case because Petitioner's "jury was not faced with an all-or-nothing choice between the offense of conviction (capital murder) and innocence." Id.

In considering Petitioner's claims on direct appeal, the OCCA followed the principles enunciated in Beck and Schad when it held:

> Further, Appellant argues that by failing to instruct the jury on lesser included offenses, the trial court failed to provide the jury with the option of convicting him of a non-capital offense as required by *Schad v. Arizona*, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) and *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). Neither *Beck* nor *Schad* require that a jury in a capital case be given a third, non-capital option where the evidence absolutely does not support that option. Regardless, the jury in this case was given a third, non-capital option of first degree manslaughter, as well as the alternative sentences of life imprisonment and life without parole. Therefore, the jury was not prevented from considering a non-capital option. Accordingly, this assignment of error is denied.

Welch, 968 P.2d at 1241.

### *Second degree murder instruction*

Petitioner's trial counsel requested a second degree murder instruction. Tr. Trans. Vol. 8 at 1932-33. The trial judge denied the request because he "did not feel that the evidence presented by either the State or Defendant would warrant the lesser included offense of Second Degree Murder." Id. at 1933. Under Oklahoma law, second degree murder is committed: "When perpetrated by an act imminently dangerous to another person and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual." Okla. Stat. tit. 21, § 701.8. The evidence in this case presented two starkly different versions of events, but basically the jury had to choose between the testimony of prosecution witnesses, buttressed by the physical evidence, or Petitioner's testimony. To assume Petitioner's version is the accurate version is to ignore other evidence presented at trial. Here, the medical examiner testified that Mr.

31

Hardcastle suffered multiple stab wounds, some of which were classified as defensive. Tr. Trans. Vol. 7 at 1730. He also testified that most of the stab wounds appeared to be knife wounds, while some were incised wounds and were likely caused by an instrument such as a broken beer bottle. Id. at 1731-32. Several of the wounds were potentially lethal "in an immediate sense." Id. at 1733. Eyewitness Patricia Nading testified that she saw three men fighting in a ditch. One was crouched down, covered with blood, while a second man was holding him down and punching him. The third man had a knife and was stabbing the first man over and over. Tr. Trans. Vol. 6 at 1256. Eyewitness Donnie Nading testified that he saw two men "attacking a third one and the third one was doing the best he could to defend himself as far as to protect himself from being assaulted." Id. at 1277. Mr. Nading specifically identified Petitioner as the man who had the knife in his hand stabbing the victim. Id. Additionally, the evidence revealed that, shortly before he collapsed and died, the victim identified Gary Welch as the person who stabbed him.

In this case, the only evidence relating to Petitioner's claim that he was acting in self defense came from his own testimony and knife wound. Since the jury obviously did not believe Petitioner's testimony that he was acting in self defense, the only other alternative clearly established a premeditated design to effect the death of Mr. Hardcastle.  Upon examination of the Oklahoma statute defining Second Degree Murder, and in light of the facts of this case, this Court agrees with the trial court that there was insufficient evidence to support a second degree murder instruction. Thus, the state court's decision was not contrary to federal law, nor did it involve an unreasonable application of the facts in light of the evidence introduced at trial. Accordingly, the trial court's refusal to give a second degree murder instruction did not constitute a violation of Petitioner's constitutional rights. Relief is therefore denied on this issue.

*Heat of passion manslaughter instruction*

Petitioner also complains that a "heat of passion" first degree manslaughter instruction should have been given to the jury. This issue was raised on direct appeal. The OCCA noted, "Appellant's complaint about the lack of an instruction on first degree manslaughter by means of a dangerous weapon is not well taken as the record shows that such an instruction was given." Welch, 968 P.2d at 1241. The Court agrees. At trial, the jury was given the following instruction:

Instruction No. 25
(OUJI-CR 912)

The defendant is charged with **Murder in the First Degree.** You are instructed that, in addition to the state's having submitted evidence concerning the crime of **Murder in the First Degree**, evidence has also been introduced concerning the crime of **Manslaughter in the First Degree**.

No person may be convicted of **Manslaughter in the First Degree** unless the State has proved beyonda [sic] a reasonable doubt each element of the crime. These elements are:

| | |
|---|---|
| First: | The death of a human; |
| Second: | The death was not excusable or justifiable; |
| Third: | Inflicted by means of a dangerous weapon; |
| Fourth: | Caused by the defendant; |
| Fifth: | When performing the conduct which caused the death, defendant was in a heat of passion. |

If you have a reasonable doubt of the defendant's guilt on the charge of **Murder in the First Degree**, you must then consider the charge of **Manslaughter in the First Degree.**

O.R. Vol. 2 at 404. The elements of heat of passion manslaughter set out by Petitioner in his reply (Dkt. # 28 at 27) are identical to the elements listed in Instruction No. 25. Petitioner is not entitled to relief on this issue.

33

V.      **Improper victim impact statements (proposition 5)**

In his fifth proposition of error, Petitioner claims that his rights guaranteed by the Eighth and Fourteenth Amendments were violated by the introduction of improper victim impact evidence during the second stage penalty phase of his trial. More specifically, he complains that the victim impact statements presented by the victim's brother, father, and mother exceeded the Oklahoma statute's bounds and were unduly prejudicial.  He also claims that Oklahoma's victim impact statute is unconstitutional, and that the victim impact testimony introduced at his trial amounted to an improper "super" aggravating circumstance. Finally, he asserts that the jury instruction given by the trial court on use of the victim impact testimony did not limit or channel the jury's discretion. With the exception of Petitioner's challenge to the constitutionality of Oklahoma's victim impact statutes, the OCCA denied relief for these claims on direct appeal.

*Constitutionality of victim impact statute in Oklahoma*

Petitioner challenges the constitutionality of the Oklahoma statutes on the admission of victim impact statements to the extent the statutes permit information concerning a family member's characterization of and opinions about the crime, the defendant, or the appropriate sentence. Dkt. #15 at 81. If a state chooses to allow the admission of victim impact evidence, the Eighth Amendment erects no *per se* bar. "A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed." Payne v. Tennessee, 501 U.S. 808, 827 (1991). In overruling its own previous split decisions in Booth v. Maryland, 482 U.S. 496 (1987), and South Carolina v. Gathers, 490 U.S. 805 (1989), the Supreme Court observed that, "assessment of the harm caused by the defendant has long been an important factor in determining

34

the appropriate punishment, and victim impact evidence is simply another method of informing the sentencing authority about such harm." Payne, 501 U.S. at 808. Noting that in most cases, "victim impact evidence serves entirely legitimate purposes," the Payne Court concluded that such statements are "simply another form or method of informing the sentencing authority about the specific harm caused by the crime in question, evidence of a general type long considered by the sentencing authorities." Id. at 825.  In 1992, Oklahoma enacted legislation permitting victim impact evidence. See Okla. Stat. tit. 21, § 701.10 (c) (1992)[13] and Okla. Stat tit. 22, §§ 984, 984.1 (1992).[14] Although not constitutionally barred, victim impact statements remain subject to certain restrictions and limitations. Victim impact evidence cannot be "so unduly prejudicial that it renders the trial fundamentally unfair" in violation of the Due Process Clause of the Fourteenth Amendment. Short v. Sirmons, 472 F.3d 1177, 1192 (10th Cir. 2006) (quoting Turrentine v. Mullin, 390 F.3d 1181, 1200 (10th Cir. 2004)).

Petitioner claims that Oklahoma's statute is unconstitutional. Respondent does not address this claim, but states that any claims raised by Petitioner beyond those presented in his direct appeal

---

[13]     Section 701.10 (c) of Title 21 provides, "In the sentencing proceeding, . . .the state may introduce evidence about the victim and about the impact of the murder on the family of the victim."

[14]    Section 984 of Title 22 in effect at the time of Petitioner's crime and trial defines "victim impact statements" as, "information about the financial, emotional, psychological, and physical effects of a violent crime on each victim and members of their immediate family, and includes information about the victim, circumstances surrounding the crime, the manner in which the crime was perpetrated, and the victim's opinion of a recommended sentence." Per section 984.1, copies of the victim impact statements are to be made available to the parties.

may be unexhausted.[15] Notably, Petitioner does not assert that this claim is exhausted. The OCCA did not address the constitutionality of Oklahoma's victim impact statute in its decision on Petitioner's direct appeal or his application for post-conviction relief. Thus, this particular portion of Petitioner's habeas claim appears to be unexhausted. As explained above, a federal claim generally will not be deemed exhausted unless the "substance" of the claim has been "fairly presented" to the state courts.   Picard v. Connor, 404 U.S. 270, 277-78 (1971); Johnson v. Cowley, 40 F.3d 341, 344 (10th Cir.1994).  The state courts must have had an opportunity to pass on the claim in light of a full record, and where the factual basis for a claim was not presented to the state courts, the claim is unexhausted.

While the Court could require Petitioner to return to state court to raise this claim in a second post-conviction application, the OCCA routinely applies a procedural bar to such claims unless the petitioner provides "sufficient reason" for his failure to raise the claim in an earlier proceeding.  Okla. Stat. tit. 22, § 1086; Moore v. State, 889 P.2d 1253 (Okla. Crim. App. 1995). Because the claim would be subject to a procedural bar in the state courts, the Court finds it would be futile to require Petitioner to return to state court to exhaust this claim.  See Duckworth v. Serrano, 454 U.S. 1, 3 (1981) (the futility exception is a narrow one, and is supportable "only if there is no opportunity to obtain redress in state court or if the corrective process is so clearly

---

[15]    Respondent correctly notes that Petitioner's direct appeal claims challenging the victim impact evidence in his case were: (1) that the victim impact evidence was contrary to the Eight and Fourteenth Amendments; (2) that it was outside the scope of such evidence allowed under State law; (3) that the victim impact evidence in his case was pervaded with inadmissible hearsay; (4) that the evidence was a "super" aggravating circumstance; (5) that the trial court failed to comply with the requirement for an *in camera* hearing as set forth by State case law; and (6) that the instruction concerning how to use victim impact evidence failed to limit and channel the jury's discretion, in violation of the Eighth Amendment. Dkt. #25 at 66. See also Brief of Appellant in Case No. F-96-692 at 35-52.

deficient as to render futile any effort to obtain relief"); see also Coleman v. Thompson, 501 U.S. 722 (1991); Steele v. Young, 11 F.3d 1518, 1524 (10th Cir. 1993). As a result, Petitioner's claim is not barred by the exhaustion requirement of 28 U.S.C. § 2254(b).

Nonetheless, Petitioner has procedurally defaulted his specific claim challenging the constitutionality of Oklahoma's victim impact statute. The doctrine of procedural default prohibits a federal court from considering a specific habeas claim where the state's highest court declined to reach the merits of that claim on independent and adequate state procedural grounds. Coleman, 501 U.S. at 729. The procedural default of Petitioner's claim never before presented to the OCCA would result in the imposition of a bar based on independent and adequate state procedural grounds should Petitioner return to state court to raise those claims in a second application for post-conviction relief. See Maes v. Thomas, 46 F.3d 979, 985 (10th Cir. 1995).

As a result, the claim challenging the constitutionality of Oklahoma's victim impact statute which was not raised in state court, will be denied on the basis of the procedural default doctrine unless Petitioner shows "cause and prejudice" or a "fundamental miscarriage of justice" to excuse his procedural default of the claims. Coleman, 501 U.S. at 750; Maes, 46 F.3d at 985. Petitioner has not demonstrated cause and prejudice or a fundamental miscarriage of justice. Accordingly, this portion of his proposition five shall be denied as procedurally barred.

*Statements of Hardcastle family*

Petitioner contends that all three of the second stage witnesses who provided victim impact testimony were allowed to state that they believed death was the appropriate punishment for Mr. Welch. He also states that the words chosen by the victim impact witnesses were "impermissibly passionate, sensational and emotionally provocative." Dkt. # 15 at 65. The victim's brother, James

Hardcastle, referred to the "cruel and inhuman actions" of Petitioner who "in cold blood, without any remorse, stabbed and mutilated my only brother in broad daylight." Tr. Trans. Vol. 9 at 2115. The victim's father, John Hardcastle, characterized Petitioner and his co-defendant as "bloodthirsty animals" who "butchered" his son "showing no pity, mercy, or feeling." Id. at 2123. The victim's mother, Mary Hardcastle, repeatedly referred to her son's murder as "brutal." She described Petitioner and Conover as "two murderous animals, and I do mean animals." Id. at 2130. Petitioner's challenge to the constitutionality of these statements was addressed by the OCCA on direct appeal:

> Turning to the specific victim impact evidence introduced in this case, it is substantially the same as that admitted in *Conover*, 933 P.2d at 918-19, n.6. Trial counsel in the present case did not object to the introduction of the victim impact evidence generally but did raise contemporaneous objections to the victim impact statements arguing they went beyond the statutory scope of victim impact evidence. The objections were overruled.

> In *Conover*, we found the victim impact evidence weighed the scales too far in favor of the prosecution. *Id.* We found such statements as the victim was "butchered like an animal", and that two men "butchered him" have no place in a victim impact statement. *Id.* at 920.

> Assuming statements like this are not prohibited under the rules of hearsay, such statements are inflammatory descriptions designed to invoke an emotional response by the jury. Such comments do not fall under the statutory provision permitting statements on the manner in which the crime was perpetrated. These type of statements are emotionally charged personal opinions which are more prejudicial than probative. *Id.* (footnote omitted). . . .

> . . . The same statements found improper in *Conover* are present in this case. The effect of this improperly admitted evidence will be addressed in the Mandatory Sentence Review.

Welch, 968 P.2d at 1242-43. In its mandatory sentence review, the OCCA found:

> We now address the first question: whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor. As noted above in our discussion of Proposition VII, we found error in the amount and type of victim impact evidence presented to the jury. However, as our discussion of the aggravating circumstances

shows, the victim impact evidence was not the only evidence presented during the sentencing stage. As discussed in *Cargle,* any error in the admission of victim impact evidence is a trial error "which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." 909 P.2d at 835 quoting *Bartell v. State*, 881 P.2d 92, 98 (Okl.Cr.1994). In the present case, the jury was properly instructed in the use of victim impact evidence and Appellant received sufficient notice of the victim impact evidence to be introduced. Further, given the fact that we have determined there was sufficient evidence to support the three aggravating circumstances, we can safely hold that portion of the victim impact evidence which was improperly admitted was harmless beyond a reasonable doubt as the improperly admitted evidence does not undermine the reliability of the verdict as to the sentence imposed.

Id. at 1253-54.

The state appellate court based its decision on Cargle v. State, 909 P.2d 806 (Okla. Crim. App. 1995), which applied the rule of law established by the Supreme Court in Payne v. Tennessee, 501 U.S. 808 (1991). In Cargle, the OCCA found the challenged victim impact statement "goes to the emotional impact of [the victim's] death" with no explicit testimony "as to the financial, psychological or physical effects of the crime on his family." Cargle, 909 P.2d at 835. Nonetheless, the OCCA concluded that the Cargle errors were harmless beyond a reasonable doubt. Id. In rejecting this claim on habeas corpus appeal, the Tenth Circuit concluded that the OCCA's decision in denying relief on this ground was not an unreasonable application of federal law. Cargle v. Mullin, 317 F.3d 1196, 1224 (10th Cir. 2003) (granting relief on other grounds).

As in Cargle, it is clear that portions of the victim impact testimony which Petitioner now challenges were improperly admitted. All three of the witnesses presenting victim impact statements indicated they thought Petitioner should receive the death penalty. This constitutes a violation of Petitioner's due process rights. (Frank Duane) Welch v. Sirmons, 451 F.3d 675, 703 (10th Cir. 2006) (recognizing that characterizations and opinions by family members about the crime, the defendant, and the appropriate sentence are prohibited under Booth and Payne). This

39

testimony was contrary to Payne and Booth,[16] resulting in a violation of Petitioner's Eighth Amendment rights. Having acknowledged constitutional errors, however, the OCCA concluded the errors were "harmless beyond a reasonable doubt." Welch, 968 P.2d at 1254. Without citing Chapman, the OCCA's language and citation to a prior decision citing Chapman confirms that the court applied the federal Chapman standard for harmless error. Thus, the question to be resolved by this Court is whether the OCCA's application of the Chapman standard was objectively unreasonable. 28 U.S.C. § 2254(d); Saiz v. Burnett, 296 F.3d 1008, 1012 (10th Cir. 2002).

Several factors convince this Court that admission of the improper victim impact evidence in question was harmless error which does not warrant habeas relief. First, the evidence of Petitioner's guilt was substantial. Second, the jury found the existence of three aggravating circumstances beyond a reasonable doubt before recommending the death penalty for Petitioner. The jury found, based upon first stage evidence incorporated by reference in the second stage proceedings, that Petitioner's attack on Mr. Hardcastle was especially heinous, atrocious, and cruel. The jury also found that Petitioner was previously convicted of a felony or felonies involving the use or threat of violence to the person. Finally, the jury found the existence of a probability that Petitioner would commit criminal acts of violence that would constitute a continuing threat to

---

[16]   The Tenth Circuit, along with several other circuits, has "expressly recognized that the portion of Booth prohibiting family members of a victim from stating 'characterizations and opinions about the crime, the defendant, and the appropriate sentence' during the penalty phase of a capital trial survived the holding in Payne and remains valid." (Frank Duane) Welch v. Sirmons, 451 F.3d 675, 703 (10th Cir. 2006) (citing United States v. Brown, 441 F.3d 1330, 1352 (11th Cir. 2006); Humpries v. Ozmint, 397 F.3d 206, 217 (4th Cir. 2005) (en banc); Parker v. Bowersox, 188 F.3d 923, 931 (8th Cir. 1999); Hain v. Gibson, 287 F.3d 1224, 1238-39 (10th Cir. 2002); United States v. McVeigh, 153 F.3d 1166, 1217 (10th Cir. 1998); Woods v. Johnson, 75 F.3d 1017, 1038 (5th Cir. 1996)).

society. The evidence supporting the three aggravating circumstances, independent of the victim impact evidence, was ample.

For the reasons stated above, the victim impact evidence was not so unduly prejudicial that it rendered Petitioner's trial fundamentally unfair. Accordingly, this Court concludes that the admission of the improper aspects of the victim impact evidence was harmless error. See (Frank Duane) Welch v. Sirmons, 451 F.3d 675, 704 (10th Cir. 2006). The OCCA's decision on this issue was not an unreasonable application of Supreme Court law. 28 U.S.C. § 2254(d).

*Victim impact evidence contained inadmissible hearsay*

Petitioner also asserts that the victim impact evidence was pervaded with inadmissible hearsay which amounted to a "super aggravating circumstance." This claim raises a state evidentiary question which cannot serve as the basis for habeas corpus relief unless the ruling rendered Petitioner's trial fundamentally unfair resulting in a violation of due process. Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002). Petitioner has not demonstrated that the admission of the statements containing hearsay rendered his trial fundamentally unfair. Further, this Court does not accept Petitioner's argument that the inadmissible hearsay characterizations contained in the victim impact testimony functioned as a "super" aggravating circumstance.

Petitioner's jury was fully instructed as to its duties for determining punishment in the second stage proceedings. O.R. Vol. 2 at 425-37. In arriving at a determination of punishment the jury was instructed to first determine whether any one or more of the three aggravating circumstances existed beyond a reasonable doubt. Instruction No. 4, O.R. Vol. 2 at 429. Jurors were advised they could "consider only those aggravating circumstances set forth in these instructions." Instruction No. 6, O.R. Vol. 2 at 431. Only after unanimously finding that one or more of the

aggravating circumstances existed beyond a reasonable doubt could the jury even consider imposing a death sentence. Id. Further, the jury was given a specific instruction regarding victim impact evidence:

INSTRUCTION No. 10
(NOT IN OUJI-CR)

The prosecution has introduced what is known as victim impact evidence. This evidence has been introduced to show the financial, emotional, psychological, or physical effects of the victim's death on the members of the victim's immediate family. It is intended to remind you as the sentencer that just as the defendant should be considered as an individual, so too the victim is an individual whose death may represent a unique loss to society and the family. This evidence is simply another method of informing you about the specific harm caused by the crime in question. You may consider this evidence in determining an appropriate punishment. However, your consideration must be limited to a moral inquiry into the culpability of the defendant, not an emotional response to the evidence.

As it relates to the death penalty: Victim impact evidence is not the same as an aggravating circumstance. Proof of an adverse impact on the victim's family is not proof of an aggravating circumstance. Introduction of this victim impact evidence in no way relieves the State of its burden to prove beyond a reasonable doubt at least one aggravating circumstance which has been alleged. You may consider this victim impact evidence in determining the appropriateness of the death penalty only if you first find that the existence of one or more aggravating circumstance has been proven beyond a reasonable doubt by evidence independent from the victim impact evidence, and find that the aggravating circumstance(s) found outweigh the finding of one or more mitigating circumstances.

O.R. Vol. 2 at 435. The jury is presumed to follow its instructions. Weeks v. Angelone, 528 U.S. 225, 234 (2000) (citing Richardson v. Marsh, 481 U.S. 200 (1987)). Petitioner's assumption that his jury considered the victim impact evidence to be a "super" aggravating circumstance ignores the plain language of the instructions given at trial, which the jury is presumed to follow. Petitioner's jury found the existence of all three aggravating circumstances beyond a reasonable doubt before recommending the death sentence for Petitioner.

42

Additionally, the Supreme Court has determined that aggravating circumstances give effect to constitutional protections by narrowing the class of death eligible murders, and the introduction of victim impact evidence does not eliminate that effect. <u>Tuilaepa v. California</u>, 512 U.S. 967, 979-80 (1994). "[T]he sentencer may be given unbridled discretion in determining whether the death penalty should be imposed after it has found that the defendant is a member of the class made eligible for that penalty." <u>Id.</u> (internal quotations omitted). "A capital sentencer need not be instructed how to weigh any particular fact in the capital sentencing decision." <u>Id.</u> at 979.

*Failure to conduct in camera hearing*

Petitioner next asserts that the trial court failed to conduct an *in camera* hearing prior to the victim impact testimony. According to Petitioner, the hearing is required under Oklahoma law as set forth in <u>Cargle v. State</u>, 909 P.2d 806 (Okla. Crim. App. 1995). It is well established that it is not the role of a federal habeas corpus court to correct errors of state law. <u>Estelle v. McGuire</u>, 502 U.S. 62 (1991). This claim is not cognizable in a habeas corpus proceeding.

*Victim impact instruction fails to limit and channel jury's discretion*

Petitioner challenges the constitutionality of the second stage jury instruction on victim impact evidence. <u>See</u> O.R. Vol. 2 at 435. He claims the instruction was "useless" because of all the other errors surrounding the admission of the evidence. The Court disagrees. The instruction specifically states the manner in which the jury is to consider the victim impact evidence. The jury is presumed to follow its instructions. <u>Weeks v. Angelone</u>, 528 U.S. 225, 234 (2000). The OCCA denied relief on this claim and Petitioner has not demonstrated that the state appellate court's decision was an unreasonable application of clearly established federal law as determined by the Supreme Court. Habeas relief is denied on this issue.

43

This Court finds that the use of victim impact evidence in general under Oklahoma law and specifically in Petitioner's trial did not deprive Petitioner of his Eighth or Fourteenth Amendment rights. The OCCA's decision on victim impact issues was not an unreasonable application of clearly established federal law as determined by the Supreme Court. Habeas relief is denied on proposition five.

## VI.     Failure to define "life without parole" sentencing option (proposition 6)

As his sixth proposition of error, Petitioner complains that the trial court's answers to the jury's second stage questions regarding sentencing were unresponsive and a violation of his rights under the Eighth and Fourteenth Amendments. Petitioner primarily relies upon Simmons v. South Carolina, 512 U.S. 154 (1994), and Shafer v. South Carolina, 532 U.S. 36 (2001).[17] This issue was rejected by the OCCA:

> The court's response to the juror's questions in this case was non-responsive and as such forced the jury to fall back on the plain meaning of the instructions - instructions which merely set out the three punishment options of death, life without parole and life imprisonment. (O.R. 437). While the trial court could have specifically referred the jury back to those instructions, it was not required to further define the punishment options or explain the parole process. We find the jury was not confused or misled by the court's response as Appellant has failed to show that when the jury returned its verdict on punishment that it was confused or misunderstood any of the three punishment options.

Welch, 968 P.2d at 1246. Respondent argues that the OCCA's conclusion was correct.

In Simmons, the Supreme Court held that where the defendant's future dangerousness is at issue, and the only available alternative sentence to death is life imprisonment without possibility of parole, due process requires that the sentencing jury be informed  that the defendant is parole ineligible. Id. at 156. The Supreme Court has more recently addressed the issue whether a

---

[17]     Petitioner submitted a supplemental brief incorporating the law decided in Shafer. Dkt. # 36.

defendant has a right in a capital case to inform the jury that, under the governing law, he would not be eligible for parole in the event the jury sentences him to life imprisonment. In Shafer, the jury, as in Simmons, was only given two sentencing options–either life imprisonment or death.

The Tenth Circuit Court of Appeals has taken the opportunity to address the merits of a Simmons claim several times in the context of a habeas proceeding. In the first case, Mayes v. Gibson, 210 F.3d 1284, 1294 (10th Cir. 2000), the Circuit Court found no violation of Simmons because the trial court did not create a false choice for the jury when it instructed on the three sentencing options of life, life without the possibility of parole, and death. In the second case, the Circuit Court found no violation of Simmons when the trial judge answered the jury's question regarding the life without parole sentencing option by stating, "[R]ead the Instructions, they speak for themselves." McGregor v. Gibson, 219 F.3d 1245, 1256 (10th Cir. 2000), rev'd on other grounds on reh'g en banc 248 F.3d 946 (10th Cir. 2001). In two other cases, the Circuit Court adopted the rationale of Mayes without additional discussion or analysis. (Vincent) Johnson v. Gibson, 229 F.3d 1163 (10th Cir. 2001) (unpublished); Neill v. Gibson, 263 F.3d 1184, 1198 (10th Cir. 2001).

After the Shafer decision by the United States Supreme Court, the Circuit Court set forth an expansive discussion of Simmons as well as Shafer. (Mark David) Johnson v. Gibson, 254 F.3d 1155 (10th Cir. 2001). In Johnson, the jury inquired, during deliberations, "We need to know! Is life without parole firm - Does it mean he can *never* be paroled [?]" Id. at 1164 (emphasis in original). The trial judge responded, "[I]t is inappropriate for you to consider the question asked." Id. In resolving the issue before it, the Tenth Circuit Court of Appeals addressed its prior precedents and distinguished Mayes:

> In this case, on the other hand, the trial court instructed the jury on its three discrete sentencing options available under Oklahoma law - death, life imprisonment and life imprisonment without the possibility of parole. We have held that instructing on these three options, without any further explanation, satisfies Simmons. See Mayes, 210 F.3d at 1294. Further, a trial court, in response to a jury's inquiry as to the meaning of a life sentence without parole, may simply refer the jury back to the instructions as given. See McGregor v. Gibson, 219 F.3d 1245, 1256 (10th Cir. 2000), reh'g granted on other grounds. However, instead of simply referring the jury back to the court's original instructions, "the trial court told the jury it was not appropriate for it to consider whether the defendant could 'never be paroled.'" Johnson, 928 P.2d at 320.
>
> In Oklahoma, "the jury is not to be told of the inner workings of the parole system, even when it must compare two life sentences: one with the possibility of parole, and one without the possibility of parole." Id. This, however, does not obviate the need for a correct instruction concerning the three options, including life without parole. Simmons, 512 U.S. at 166. That a state may limit information given to juries about parole does not eliminate the need to inform the jury of parole ineligibility where future dangerousness is at issue. Id. at 168-69 [,] . . . [where, as in Oklahoma,] "the jury must consider the distinctions between life, life without parole and death as it reaches its sentencing decision." Johnson, 928 P.2d at 320.

Id. at 1165 (parallel citations omitted). The Circuit Court concluded that the trial court's response stating it was inappropriate for the jury to consider parole eligibility did not refer the jury back to the instructions, but contradicted the instructions. Id. ("The trial court did more than give a non-responsive answer - it told the jury that parole eligibility could not be considered when plainly it could be.") In a concurring opinion, Judge Henry stressed that both the Simmons and Shafer decisions focused on whether the misunderstanding of the jury had the effect of creating a false choice of sentencing options for the jury to consider. Id. at 1167-68. A false choice is created when a jury may reasonably have believed that the petitioner could be released on parole if he were not executed. Simmons, 512 U.S. at 161.

The Tenth Circuit Court of Appeals also affirmed the district court's grant of habeas corpus relief on this issue in Mollett v. Mullin, 348 F.3d 902, 909 (10th Cir. 2003). As in the Johnson case,

Mr. Mollett's trial judge responded to the jury's question whether life without parole meant the defendant could never be paroled by advising them, "[I]t is inappropriate for you to consider the question asked." Id. at 909. The Circuit Court summarized the requirements of Simmons and Shafer as follows:

> Under Simmons, a defendant's due process rights are violated in cases like the instant one where: (1) the prosecution seeks the death penalty; (2) the prosecution places the defendant's "future dangerousness . . . at issue," Shafer, 532 U.S. at 51; (3) the jury asks for clarification of the meaning of "life imprisonment," or a synonymous statutory term, Shafer, 532 U.S. at 45; and (4) the judge's response threatens to cause "a jury's misunderstanding so the jury will . . . perceive a 'false choice' of incarceration when future dangerousness is at issue." Johnson, 254 F.3d at 1166; see also Shafer, 532 U.S. at 51 ("Simmons' due process concerns arise" if there are "'misunderstanding[s]' to avoid, [or] 'false choice[s]' to guard against.")(quoting Simmons, 512 U.S. at 161).

Id. at 914 (parallel citations omitted).

In this case, Mr. Welch satisfies the first three of the four requirements set out in Mollett. First, this was a capital case. Second, the state placed Petitioner's future dangerousness at issue by seeking the death penalty based upon Oklahoma's continuing threat aggravating circumstance. Third, the jury asked for clarification by sending two separate questions[18] to the judge regarding the life without parole sentencing option. The judge's reply to both questions, however, was a non-responsive, "I am not allowed to answer this question." See copy of jury questions in manilla envelope submitted with the record transmitted February 14, 2001.

The question before this Court is whether the judge's response threatened to cause a jury misunderstanding so the jury would perceive a 'false choice' of incarceration. Although this Court

---

[18]   The first question asked, "Can life without parole be reduced by appeal or pleas in the future?" The second question asked, "Has anybody ever be [sic] released with the sentencing of life without parole?" See copy of jury questions in manilla envelope submitted with the record transmitted February 14, 2001.

has found no case in which a judge responded to a jury's request for clarification by stating, "I am not allowed to answer this question," the response is similar to other answers found to be acceptable under Simmons and Shafer. In McCracken v. Gibson, 268 F.3d 970, 980-81 (10th Cir. 2001), the Tenth Circuit considered the trial judge's refusal to explain what the term "life imprisonment without the possibility of parole" meant in response to a note sent by the jury during deliberations.[19] In response to the jury's inquiry, the trial judge stated: "I will instruct you again to look at your instructions. The law in Oklahoma provides a person convicted of murder in the First Degree is punishable by death, by life without parole or life. You may retire and deliberate further." Id. at 981 n.3. The Circuit Court found that the trial judge's response did not create a false choice between sentencing Mr. McCracken to death and sentencing him to a limited period of incarceration. Id. Similarly, in McGregor, 219 F.3d at 1256, the Tenth Circuit found acceptable the trial judge's response to a jury inquiry "what happens on life without parole?" in which he simply directed the jury to "read the Instructions, they speak for themselves." The Circuit Court also upheld the trial judge's response to a jury note in Mayes, 210 F.3d at 1287, in which the judge indicated the instructions given were self-explanatory. This Court observes that the approved responses in McCracken, McGregor, and Mayes were all non-responsive to the questions asked by the respective jurors. However, they did not contradict other instructions given to the jury, nor did they provide information that was misleading or could create a false choice for the jurors to consider.

---

[19]     During second stage deliberations, a note from the jury to the judge asked, "Does life without parole mean exactly that? No chance of parole whatsoever? He would *never*, under any circumstances, get out of prison?" McCracken, 268 F.3d at 981 n.3.

Likewise, the non-responsive answer of Petitioner's trial judge did not create a false choice between a sentence of death or a limited period of incarceration for the jurors to consider. Nor did it contradict other instructions given by the court or mislead the jury. The trial judge's answer had the effect of guiding the jurors back to the plain language of the original instructions. Unlike the responses at issue in <u>Johnson</u> and <u>Mollett</u>, the judge's response in this case did not contradict the instructions. Accordingly, the fourth element of a <u>Simmons</u> violation set out in <u>Mollett</u> has not been satisfied. This Court finds that the trial judge's non-responsive answer did not result in a violation of Petitioner's due process rights. Thus, Petitioner has failed to demonstrate that the OCCA's resolution of this claim unreasonably applied Supreme Court law. 28 U.S.C. § 2254(d)(1). Petitioner's sixth ground for relief is denied.

## VII.   Failure to give specific mitigation instruction to jury (proposition 7)

In proposition seven, Petitioner argues the trial court erred in refusing to give his requested mitigation instruction. The requested instruction identified four mitigating circumstances specifically offered into evidence.[20] During second stage, the trial court instructed the jury regarding mitigating evidence as follows:

> Mitigating circumstances are those which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability or blame. The determination of what are mitigating circumstances is for you as jurors to resolve under the facts and circumstances of this case.

---

[20]   Petitioner's requested instruction asked the jury to consider the following mitigating factors: (1) the defendant's mental capacity was impaired by a combination of substance abuse and childhood trauma; (2) the defendant has family members and friends who love him and who will, if the defendant is not put to death, visit him and maintain a relationship with him: (3) the mental impairment defendant suffers from is controlable [sic] by medication and deprivation from drugs and alcohol; (4) the defendant benefits from a controled [sic] environment such as that provided in prison. O.R. Vol. 2 at 424.

O.R. Vol. 2 at 432. The jury was also instructed (second stage Instruction No. 8) that it could not impose the death penalty unless it unanimously found that any aggravating circumstance or circumstances outweighed the finding of one or more mitigating circumstances. Id. at 433. Petitioner asserts that the omission of the requested instruction listing specific mitigating circumstances to be considered by the jury was a violation of his constitutional rights as determined by the Supreme Court in <u>Penry v. Lynaugh</u>, 492 U.S. 302 (1989), overruled on other grounds by <u>Atkins v. Virginia</u>, 536 U.S. 304 (2002). On direct appeal, the OCCA held that the instructions did not prevent the jury from considering mitigating evidence:

> The present case is distinguishable from *Penry* in that we are not faced with instructions which improperly limit the jury's consideration of certain evidence but with the absence of an instruction specifically directing their consideration of certain evidence. The absence of that type of instruction in light of the instructions which were given during second stage did not deny Appellant a fair sentencing proceeding. The record shows the jury was instructed that mitigating circumstances were those which, in fairness and mercy, may be considered as extenuating or reducing the degree of the defendant's moral culpability or blame and that the determination of what are mitigating circumstances was solely for the jury to resolve under the facts and circumstances of the case. (Instruction No. 7, O.R. 432). The jury was also instructed that before it could impose the death sentence it must first find an aggravating circumstance beyond a reasonable doubt and the aggravating circumstance must outweigh the mitigating evidence. Under these instructions, we find the jury was not prevented from considering the evidence nor is there a reasonable likelihood the jury failed to consider the evidence offered in mitigation. Therefore, the failure to give an instruction specifically listing the mitigating evidence does not warrant reversal or modification of sentence.

<u>Welch</u>, 968 P.2d at 1244-45. This Court agrees.

The Supreme Court has determined that a jury may not be precluded from considering any "constitutionally relevant mitigating evidence." <u>Buchanan v. Angelone</u>, 522 U.S. 269, 276 (1998) (citing <u>Penry</u> and other cases). "However, the state may shape and structure the jury's consideration of mitigation so long as it does not preclude the jury from giving effect to any relevant mitigating

evidence." Id. (citing Johnson v. Texas, 509 U.S. 350, 362 (1993); Penry v. Lynaugh, 492 U.S. 302, 326 (1989); Franklin v. Lynaugh, 487 U.S. 164, 181 (1988)). Concerned that restrictions on a jury's sentencing determination not preclude the jury from being able to give effect to mitigating evidence, the Supreme Court held in Boyde v. California, 494 U.S. 370 (1990), that, "[T]he standard for determining whether jury instructions satisfy these principles was 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence.'" Id. at 380. The OCCA clearly followed the mandates of Penry, Buchanan, and Boyde in its analysis of Petitioner's claim. Having failed to demonstrate that the OCCA's finding was an unreasonable application of Supreme Court law, Petitioner is not entitled to relief on this issue.

## VIII.   Errors associated with aggravating circumstances (proposition 8)

In his eighth proposition, Petitioner challenges the application of the heinous, atrocious, or cruel ("HAC") and continuing threat aggravating circumstances.[21] These issues were raised on direct appeal, addressed on the merits, and rejected by the OCCA. Respondent contends that Petitioner has failed to demonstrate that the OCCA's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.

*Insufficient evidence to support the heinous, atrocious, or cruel aggravating circumstance*

Petitioner first claims the HAC aggravator is unconstitutional as applied to his case because there was insufficient evidence submitted at trial to support the aggravating circumstance.

---

[21]   Petitioner acknowledges that both aggravating circumstances have been held to be constitutional by both state and federal courts, but asserts they were unconstitutional "as applied" to him. Dkt. # 16 at 108-09.

Petitioner relies on his own testimony and version of the facts as "undisputed evidence" that he

acted in self defense. The jury did not, however, accept Petitioner's version of the facts. In denying

this claim on direct appeal, the OCCA summarized the evidence supporting the HAC aggravator:

> When the sufficiency of the evidence of an aggravating circumstance is challenged on appeal, the proper test is whether there was any competent evidence to support the State's charge that the aggravating circumstance existed. In making this determination, this court should view the evidence in the light most favorable to the State. *Bryson*, 876 P.2d at 259; *Romano v. State*, 847 P.2d 368, 387 (Okl.Cr.1993), *cert granted and case aff'd; Romano v. Oklahoma*, 512 U.S. 1, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994). Evidence supporting a finding that a murder was especially heinous, atrocious or cruel requires proof that the death was preceded by torture or serious physical abuse. *Neill v. State*, 896 P.2d 537, 555 (Okl.Cr.1994), *cert denied*, 516 U.S. 1080, 116 S.Ct. 791, 133 L.Ed.2d 740, (1996).
> . . .
> In the present case, the evidence showed that the victim was conscious as he was attacked with a knife and a broken beer bottle and desperately sought to run away from his attacker and defend himself. He was able to talk with the first officer who responded to the scene and identify Appellant as the assailant. Therefore, unlike the cases cited by Appellant, there was no need for the jury to speculate as to whether the victim remained conscious after the infliction of the initial wounds or whether he suffered mental anguish.
>
> Further, the evidence in this case showed the victim did not die immediately, but was left to languish from multiple stab wounds. Leaving a victim to linger and languish after he was stabbed is sufficient to support this aggravator. *See McCracken*, 887 P.2d at 332. Therefore, we find sufficient evidence of the victim's mental torture and conscious physical suffering to support this aggravator.

Welch, 968 P.2d at 1246-47.

It should first be noted that under 28 U.S.C. §2254(e)(1), the Court must afford the OCCA's

factual determinations a presumption of correctness. Boyd v. Ward, 179 F.3d 904, 915 (10th Cir.

1999). In addition, the presumption of correctness can only be rebutted by clear and convincing

evidence. 28 U.S.C. § 2254(e)(1). Mr. Welch has failed to meet this burden. Here, the OCCA

concluded that the evidence left no doubt as to the conscious physical suffering of Mr. Hardcastle

after being chased and stabbed repeatedly. Petitioner's only rebuttal to these facts is a reiteration of his self defense claim, which was not accepted by the jury.

However, the Tenth Circuit has not yet resolved whether the state court decision should be reviewed as a legal question, fact question, or mixed question of law and fact. See Boltz v. Mullin, 415 F.3d 1215, 1230 (10th Cir. 2005); Turrentine v. Mullin, 390 F.3d 1181, 1197 (10th Cir. 2004); Romano v. Gibson, 278 F.3d 1145, 1154 (10th Cir. 2002). The Circuit has summarized the considerations as follows:

> Prior to AEDPA, we reviewed sufficiency of the evidence challenges de novo. *See* Moore v. Gibson, 195 F.3d 1152, 1176 (10th Cir. 1999). Under AEDPA, however, our standard of review is not clear. There is precedent in the Tenth Circuit that a sufficiency of the evidence challenge is a legal question and other precedent suggesting it is a question of fact. *See* Moore, 195 F.3d at 1176-77 (collecting cases on both sides). If we treat the issue as a legal determination, we look to 28 U.S.C. § 2254(d)(1) and determine whether the state court decision was contrary to or an unreasonable application of clearly established federal law. If, on the other hand, it is a factual question, we look to § 2254(d)(2) and decide whether the state court decision was an unreasonable determination of the facts in light of the evidence presented to the state court. Further, § 2254(e)(1) requires us to afford a presumption of correctness to a state court's factual findings.

> Hale v. Gibson, 227 F.3d 1298, 1335 n.17 (10th Cir. 2000); *see also* Thomas v. Gibson, 218 F.3d 1213, 1227 (10th Cir. 2000) (using formulation and finding evidence insufficient to support aggravator); Medlock v. Ward, 200 F.3d 1314, 1321 & n.6 (10th Cir. 2000) (using same formulation and finding evidence sufficient to support aggravator); Moore v. Gibson, 195 F.3d 1152, 1176-77 (10th Cir. 1999) (same). Thus, if we treat the issue as a legal determination under § 2254(d)(1) we ask whether the state court decision was contrary to or an unreasonable application of the "rational factfinder" standard. On the other hand, if we treat the issue as a factual determination under § 2254(d)(2) and (e)(1) we ask whether Fields has rebutted the presumption of correctness by showing, by clear and convincing evidence, that the state court's decision was an unreasonable determination of the facts.

> We have held, however, that it is possible to avoid deciding what standard of review applies when the petitioner's claims are clearly meritless under either standard. *See* Hale, 227 F.3d at 1335 n.17 ("In this case, however, we do not determine which is the more appropriate analysis because Hale's claim lacks merit under either

standard of review.") Here, too, we follow this approach because we believe that under either of these highly deferential standards Fields's claim fails.

Fields v. Gibson, 277 F.3d 1203, 1220 (10th Cir. 2002). As in Fields, Petitioner's claim fails under either standard. As noted above, this Court cannot find the state appellate court's decision was an unreasonable determination of the facts in light of the evidence presented.

In analyzing whether the OCCA's decision was a correct legal determination, the "appropriate standard of review is the 'rational factfinder' standard established in Jackson v. Virginia, 443 U.S. 307." Lewis v. Jeffers, 497 U.S. 764, 781(1990). The relevant habeas question under the Jackson standard is to ask whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the [aggravating circumstance] beyond a reasonable doubt." Jackson, 443 U.S. at 319; Lewis, 497 U.S. at 782 (considerations also apply to habeas review of state court's finding of aggravating circumstances). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. The Tenth Circuit has emphasized that, under Jackson, "review is 'sharply limited' and a court 'faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting Wright v. West, 505 U.S. 277, 296-97 (1992)). This Court's review is limited to deciding whether the OCCA's decision that there was sufficient evidence to support a jury's finding of the HAC aggravator was contrary

to or an unreasonable application of <u>Jackson</u>.  28 U.S.C. § 2254(d)(1); <u>Spears v. Mullin</u>, 343 F. 3d 1215, 1238 (10th Cir. 2003).

In applying the <u>Jackson</u> standard, the Court looks to Oklahoma law to determine the "substantive elements" of the aggravating circumstance. Under Oklahoma law, the HAC aggravator is properly found when the murder was "preceded by torture or serious physical abuse." <u>Medlock v. Ward</u>, 200 F. 3d 1314, 1321 (10th Cir. 2000).  The OCCA has determined that physical abuse requires evidence of conscious, physical suffering. <u>Romano v. Gibson</u>, 239 F. 3d 1156, 1171 (10th Cir. 2001); <u>see</u> <u>also</u> <u>Powell v. State</u>, 906 P. 2d 765, 779-80 (Okla. Crim App. 1995) (recognizing that it is critical for the State to prove the victim's conscious physical suffering before death); <u>Spears v. State</u>, 900 P. 2d 431, 443 (Okla. Crim. App. 1995). According to the OCCA:

> To prove a murder was especially heinous, atrocious or cruel, the State must introduce competent evidence indicating the victim's death was preceded by torture or serious physical abuse, which may include the infliction of either great physical anguish or extreme mental cruelty. *Perry v. State*, 893 P.2d 521, 533-34 (Okl. Cr.1995); *Booker v. State*, 851 P.2d 544, 548 (Okl.Cr.1993); *Battenfield v. State*, 816 P.2d 555, 565 (Okl.Cr.1991), *cert. denied*, 503 U.S. 943, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992). To support a finding of serious physical abuse, the State must show the victim endured *conscious* physical suffering prior to death. *Stafford v. State*, 832 P.2d 20, 23 (Okl.Cr. 1992). As we stated in *Perry*, 893 P.2d at 534, it is critical the State prove the victim consciously suffered prior to death. Prosecutors have proved this aggravator by introducing evidence the victim suffered numerous defensive wounds indicating that the victim was conscious and attempted to fight off her attacker; statements from the defendant indicating the victim consciously suffered serious physical abuse or extreme mental cruelty prior to death; witness testimony that the victim was alive and conscious at the time the physical abuse was inflicted; or medical evidence that the victim was conscious during the infliction of serious physical injury. <u>Id.</u> and cases cited therein.

<u>Powell v. State</u>, 906 P.2d 765, 779 -80 (Okla. Crim. App.1995) (emphasis in original).

Additionally, the OCCA has stated that there are no "specific, uniform criteria, applicable to all murder cases, which would make the application of the 'heinous, atrocious or cruel' aggravator a mechanical procedure." Robinson v. State, 900 P.2d 389, 401 (Okla. Crim. App. 1995). "Rather, the examination of the facts of each and every case is necessary in determining whether the aggravator was proved." Id. Therefore, the Court must focus its inquiry on the particulars of this case, rather than this case's similarity to another, to resolve the sufficiency of the evidence claim supporting the "heinous, atrocious or cruel" aggravating circumstance. See id. While evaluating the particular evidence introduced at Petitioner's trial, the Court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993). In Petitioner's case, the jury's resolution of the evidence is clearly within the bounds of reason. Several eyewitnesses testified about various stages of the chase, beating, and stabbing of Mr. Hardcastle by Welch and Conover. The medical examiner testified about the multiple stab wounds suffered by the victim before he bled to death. The police officer called to the scene testified that the victim was still alive when the officer arrived, asked for water and identified Petitioner as his attacker.  Under the "rational factfinder" test of Jackson, viewing all evidence and drawing all reasonable inferences in the light most favorable to the prosecution, the jury's finding of the HAC aggravator in Petitioner's case was reasonable. The evidence presented at Petitioner's trial was sufficient to fall within Oklahoma's narrowed scope of the heinous, atrocious, or cruel aggravator. Thus, the OCCA's decision regarding sufficiency of the evidence was not an unreasonable application of the Jackson standard of review. Petitioner is not entitled to habeas corpus relief on this issue.

*Improper instruction on heinous, atrocious, or cruel aggravating circumstance*

Petitioner next argues that his constitutional rights were violated when the trial court improperly instructed the jury on the "heinous, atrocious, or cruel" aggravating circumstance by omitting the word "physical" from the last sentence of the instruction. The uniform jury instruction in effect at the time of Petitioner's trial stated that "especially heinous, atrocious or cruel" is directed to those crimes where the death of the victim is preceded by torture of the victim or "serious physical abuse". OUJI-CR 436 (First Edition).

Instruction number 5, as read to the jurors in Petitioner's trial, stated:

> As used in these instructions, the term heinous means extremely wicked or shockingly evil. Atrocious means outrageously wicked and vile. Cruel means pitiless, or designated design to inflict a high degree of pain, utter indifference to or enjoyment of the sufferings of others.

> The phrase especially heinous, atrocious or cruel is directed to those crimes where the death of the victim was preceded by torture of the victim or <u>serious abuse</u>. (emphasis added).

<u>See</u> O.R. Vol. 9 at 2204-05. Petitioner argues that the phrase "serious abuse" does not comply with the mandates of <u>Maynard v. Cartwright</u>, 486 U.S. 356 (1988), which require instructions to limit and channel the jury's attention. He claims the modified phrase lessens the standard required by the Supreme Court for aggravating circumstances used in death penalty cases. Respondent contends that the omission of the word "physical" from the last sentence in the instruction did not destroy the narrowing function of the instruction.

This precise issue has been addressed by the Tenth Circuit Court of Appeals on more than one occasion, and the Circuit Court has determined that, "[D]espite the omission of the word 'physical' from the instruction, the instruction still performed its required narrowing function and

imposed restraint upon the sentencer." Miller v. Mullin, 354 F.3d 1288, 1300 (10th Cir. 2004); Turrentine v. Mullin, 390 F.3d 1181, 1196 (10th Cir. 2004).

As in both the Miller and Turrentine cases, the OCCA determined in Petitioner's appeal that the omission of the word "physical" was error, but harmless error. Welch, 968 P.2d at 1247-48. Specifically, the OCCA found that the error in Petitioner's case was harmless because the instruction did not lessen the standard of proof the jury had to apply to find this aggravator, nor did it mislead "the jury into interpreting the aggravator in an unconstitutional manner." Id. at 1247.

The state appellate court adjudicated this error on the merits. Petitioner is not entitled to habeas relief from this court unless the state appellate court's ruling is contrary to or constitutes an unreasonable application of federal law. Williams v. Taylor, 529 U.S. 362, 364 (2000); 28 U.S.C. § 2254(d)(1). Because the OCCA did not directly reference any federal law upon which it relied, this Court will apply the harmless-error standard originally set forth in Kotteakos v. United States, 328 U.S. 750 (1946). The test is whether the incorrect wording in the instruction had "substantial and injurious effect or influence in determining the jury's verdict." Id. at 776. See also California v. Roy, 519 U.S. 2 (1997); Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

The OCCA concluded that the term "serious abuse" controls the standard of proof, and that term was given to the jury. Further, the Oklahoma appellate court observed that "under the evidence presented at trial, torture as it is ordinarily understood was involved, and there is no indication the jury understood the phrase 'serious abuse' in any sense other than as 'serious physical abuse.'" Welch, 968 P.2d at 1247-48.

This Court agrees with the state appellate court's assessment of this issue. The omission of the word "physical" from the last sentence in the "heinous, atrocious or cruel" instruction did not

have a substantial and injurious effect or influence in determining the jury's verdict. The OCCA's determination that use of the incorrect wording was harmless error does not constitute an unreasonable application of federal law. 28 U.S.C. § 2254(d)(1); Miller v. Mullin, 354 F.3d 1288, 1300 (10th Cir. 2004); Turrentine v. Mullin, 390 F.3d 1181, 1196 (10th Cir. 2004). Habeas relief on this issue is denied.

*Continuing threat aggravator is unconstitutional as applied in Petitioner's case*

Petitioner next asserts that application of the continuing threat aggravator violated his constitutional rights because "stale" and unadjudicated offenses were irrelevant. Further, he claims that the non-uniform jury instruction lessened the State's burden of proof. On direct appeal, the OCCA held that the use of unadjudicated offenses to prove "continuing threat" was allowed under Oklahoma law. In addition, the jury instruction did not constitute plain error. Welch, 968 P.2d at 1248-49.

Although Petitioner argues that the offenses used to support the continuing threat aggravator were unadjudicated and did not provide constitutionally sufficient evidence to support the continuing threat aggravator, he offers no legal authority to support his contention. The United States Constitution does not preclude a capital sentencer from considering unadjudicated bad acts. Knighton v. Mullin, 293 F.3d 1165, 1172 (10th Cir. 2002). Because the controlling standard is whether any rational trier of fact could have found the aggravator beyond a reasonable doubt, under AEDPA, we ask only "whether the OCCA's decision was reasonable." McCracken v. Gibson, 268 F.3d 970, 981 (10th Cir. 2001).

The State provided evidence of a 1981 conviction for aggravated assault and battery on a police officer after former conviction of a felony (Tr. Trans. Vol. 9 at 2025-26), and a 1982

conviction for assault and battery with a dangerous weapon after former conviction of a felony (Id. at 2032).  The Chief of Police for the Miami, Oklahoma, Police Department testified that he knew Gary Welch because throughout the Chief's career there were numerous times that Mr. Welch was arrested in Miami. Id. at 2033. He also testified to a specific incident in 1990 when Petitioner resisted arrest by kicking the arresting officers. Id. at 2036. A local tavern owner testified about an incident in 1991 when Petitioner threw a pitcher of beer at her, injuring her and causing her to require stitches on her face. Id. at 2040-41. Another police officer testified about a 1981 incident when Petitioner attacked him in the booking room of the police department while screaming that he did not want to go back to prison. Id. at 2046-47. Two other former Miami police officers testified about incidents in which Mr. Welch was violent upon or after his arrests. Id. at 2048-58. A state highway patrolman and a jailer at the Ottawa County jail provided testimony about additional incidences of violence involving Petitioner. Id. at 2059-76. After reviewing the evidence in the light most favorable to the State, this Court finds that any rational trier of fact could have found the continuing threat to society aggravating circumstance existed beyond a reasonable doubt. Jackson, 443 U.S. at 319. Therefore, the OCCA did not act contrary to Jackson or any other clearly established federal law in upholding the jury's finding of this aggravating circumstance.  The state appellate court's determination that there was sufficient evidence to support this aggravating circumstance was not unreasonable under either 28 U.S.C. § 2254(d)(1) or (2). Habeas relief is denied on this claim.

**IX.     Errors in second stage jury instructions (proposition 9)**

In proposition nine, Petitioner claims that second stage jury instructions violated his constitutional rights because (1) the instructions failed to inform the jury that its findings regarding

mitigating circumstances did not have to be unanimous; (2) the instructions permitted the jurors to ignore mitigating evidence and diminished the effect of the evidence presented; and (3) the trial court failed to instruct the jury that it could consider a sentence of life or life without parole even if they found the existence of one or more aggravating circumstances. These objections to second stage jury instructions were rejected by the OCCA on direct appeal.

*Mitigating circumstances instruction regarding unanimity*

Petitioner first complains that the jury instructions given in the second stage failed to specifically advise the jurors that unanimity was not required for mitigating circumstances. Relying primarily on McKoy v. North Carolina, 494 U.S. 433 (1990), and Mills v. Maryland, 486 U.S. 367 (1988), Petitioner asserts that there was a reasonable likelihood that the jury interpreted the instructions as a whole to require a unanimous finding of mitigating circumstances. Petitioner's argument is unconvincing.

The Tenth Circuit's holding in Duvall v. Reynolds, 139 F. 3d 768 (10th Cir. 1998), is directly on point. "A trial court need not, however, expressly instruct a capital sentencing jury that unanimity is not required before each juror can consider a particular mitigating circumstance." Id. at 791. The Petitioner in Duvall also relied on McKoy and Mills to support his claim. Further, the instructions used by the trial court in Duvall, relevant to the mitigating and aggravating circumstances, were similar, and in most portions identical, to the ones used at Petitioner's trial. Compare Duvall, 139 F. 3d at 791-92, with Petitioner's second stage instruction Nos. 6, 7, and 8 (O.R. at 431-33). In Duvall, the Tenth Circuit held, "that there is no reasonable likelihood that the jury applied these instructions in a way that required them to agree unanimously upon the existence of a mitigating circumstance before considering it." Id. at 792.

Arguments similar to Petitioner's claim have been considered and rejected by the Tenth Circuit on more than one occasion. See Sallahdin v. Gibson, 275 F. 3d 1211, 1232 (10th Cir. 2002), and Fox v. Ward, 200 F. 3d 1286, 1302 (10th Cir. 2000). Hence, the Court follows the precedent set by Duvall and later cases, and finds that Petitioner is not entitled to habeas relief on this issue.

*Instructions allowed jurors to ignore mitigating evidence*

Petitioner next questions the constitutionality of the mitigating evidence instructions. Second stage instruction number 7 defines mitigating circumstance as:

> Mitigating circumstances are those which, in fairness and mercy, *may be considered* as extenuating or reducing the degree of moral culpability or blame. The determination of what are mitigating circumstances is for you as jurors to resolve under the facts and circumstances of this case. O.R. Vol. 2 at 432. (emphasis added).

Petitioner argues that the instruction did not require the jury to consider mitigating factors at all, and created doubt as to the jury's constitutional duty to consider the mitigating circumstances.

The "reasonable likelihood" standard developed in Boyde v. California, 494 U.S. 370, 380 (1990), applies to determine the merits of this challenged jury instruction. The Court must determine the likelihood that a reasonable juror, looking at all the instructions given, would decide Instruction Number 7 gave them the right to ignore the mitigating evidence. The Court finds it unlikely that a reasonable juror would believe the "may be considered" language in the mitigating instruction gave the jury the right to disregard other instructions and not consider any mitigating evidence. Second stage instruction number 8 informs the jury that the aggravating circumstance(s) must outweigh mitigating circumstances before the death penalty can be imposed. O.R. Vol. 2 at 433. In addition, the jurors were instructed to consider all of the instructions together and "not just a part of them." See Instruction Number 12, O.R. Vol. 2 at 437.

The Tenth Circuit has consistently upheld the constitutionality of jury instructions identical to Number 7. See, e.g., Smallwood v. Gibson, 191 F. 3d 1257, 1270-71 (10th Cir. 1999); Boyd v. Ward, 179 F. 3d 904, 923-24 (10th Cir. 1999). In determining if the Boyde standard, "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents consideration of constitutionally relevant evidence," Boyde, 494 U.S. at 380, has been satisfied in the instant case, this Court must review the jury instructions in total. Cupp v. Naughten, 414 U.S. 141, 146-47 (1973).

Having reviewed the jury instructions in total, this Court finds that when all of the instructions are viewed together, a reasonable juror would find Instruction Number 7 actually widens the range of circumstances that may be considered as mitigating. The language opens the juror's options to those circumstances that "may be considered" as extenuating, not just those that "are considered," or "have been determined to be," or "they unanimously find" extenuating.  When considered in conjunction with all of the instructions, the instructions on mitigating circumstances do not prevent the consideration of constitutionally relevant evidence nor do they violate Petitioner's constitutional rights. Habeas relief is denied on this issue.

*Instruction regarding sentencing options even if aggravators found*

Petitioner asserts in this portion of his ninth proposition that the trial court erred by failing to instruct the jury that it could consider a sentence of life or life without parole even if it found the existence of one or more aggravating circumstances. Petitioner acknowledges that the OCCA and the Tenth Circuit have repeatedly rejected this type of claim. In addressing identical issues raised by Petitioner in this case, the Tenth Circuit has held:

63

> Mr. Fox next argues that he is entitled to relief because the jury instructions given did not explicitly inform the jury that they were not required to give a sentence of death, even if they made a determination that the aggravating factors outweighed the mitigating factors. Mr. Fox properly recognizes that we have rejected this very claim in <u>Duvall v. Reynolds</u>, 139 F.3d 768, 789-91 (10th Cir. 1998). He urges that we nevertheless depart from our earlier holding given that the court there failed to consider the relevance of Oklahoma's revision of its uniform jury instructions in 1994, to include the instruction he sought at trial. This argument is likewise unavailing; the court squarely passed on this contention in <u>Bryson v. Ward</u>, 187 F.3d 1193, 1207 (10th Cir. 1999). In *Bryson*, we held that while the revised jury instruction clearly sets forth the settled law, the failure to give such an instruction is not constitutional error. *Id.* As stated previously, this resolution binds this panel in the instant case.

<u>Fox v. Ward</u>, 200 F.3d 1286, 1300-01 (10th Cir. 2000). This Court must follow the precedent established by the Tenth Circuit, and finds that Petitioner is not entitled to habeas corpus relief on this ground.

## X.        Ineffective assistance of counsel (proposition 10)

As his tenth proposition of error, Petitioner raises four instances of alleged ineffective assistance of trial counsel: (1) failure to cross-examine witnesses regarding the victim's drug activity; (2) failure to object to flawed second stage jury instructions; (3) failure to challenge improper *voir dire*; and (4) failure to develop mitigation evidence regarding Petitioner's psychological history. The OCCA found against Mr. Welch on the merits of the first two claims, which had been raised on direct appeal. The OCCA found that Mr. Welch defaulted the remaining two ineffectiveness claims because he did not raise them until post-conviction proceedings. Petitioner claims his appellate counsel was ineffective for failing to raise the defaulted issues on direct appeal. The OCCA also denied Petitioner's post-conviction claims of ineffective assistance of appellate counsel.

*Review Standards*

Claims of ineffective assistance of counsel are mixed questions of law and fact. Bland v. Sirmons, 459 F.3d 999, 1030 (10th Cir. 2006); Wallace v. Ward, 191 F.3d 1235, 1247 (10th Cir.1999) (applying AEDPA). It is well established that to prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-pronged standard enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  See Murray v. Carrier, 477 U.S. 478, 488-89 (1986); United States v. Cook, 45 F.3d 388, 394-95 (10th Cir. 1995).  The Strickland test requires a showing of both deficient performance by counsel and prejudice to Petitioner as a result of the deficient performance.  Strickland, 466 U.S. at 687.  Deficient performance is established by showing counsel committed serious errors in light of "prevailing professional norms" to the extent that the legal representation fell below "an objective standard of reasonableness." Strickland, 466 U.S. at 688.[22] To satisfy the deficient performance prong of the test, Petitioner must overcome a strong presumption that counsel's conduct fell within the "wide range of reasonable professional assistance [that] . . . might be considered sound trial strategy."  Brecheen v. Reynolds, 41 F.3d 1343, 1365 (10th Cir. 1994) (citations omitted). Finally, the focus of the first prong is "not what is prudent or appropriate, but only what is constitutionally compelled."  Id.  "For counsel's performance to be constitutionally ineffective, it must have been 'completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy.'" Le v. Mullin, 311

---

[22]     The Strickland Court declined to form a checklist for evaluation of attorney performance or to exhaustively define the obligations for counsel, saying:"More specific guidelines are not appropriate. The Sixth Amendment refers simply to 'counsel,' not specifying particular requirements of effective assistance . . . . The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688.

F.3d 1001, 1025 (10th Cir. 2002) (citing Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir. 1997)

(quoting Hatch v. Oklahoma, 58 F.3d 1447, 1459 (10th Cir. 1995), overruled on other grounds by

Daniels v. United States, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001)).

Even if the petitioner is able to show constitutionally deficient performance, he must also

show prejudice under Strickland's second prong before a reviewing court will rule in favor of an

ineffective assistance of counsel claim. "Prejudice" in this context means that "counsel's errors

were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

Strickland, 466 U.S. at 687.  Stated differently, Petitioner must prove that "there is a 'reasonable

probability' that the outcome would have been different had those errors not occurred."  United

States v. Haddock, 12 F.3d 950, 955 (10th Cir. 1993) (citing Strickland, 466 U.S. at 694). When

a petitioner is specifically challenging the imposition of the death sentence during the punishment

phase of the trial, the prejudice prong of Strickland focuses on whether there is "a reasonable

probability that, absent the errors, the sentencer . . . would have concluded that the balance of

aggravating and mitigating circumstances did not warrant death." Stafford v. Saffle, 34 F.3d 1557,

1564 (10th Cir.1994); Strickland, 466 U.S. at 695.

Courts may address the performance and prejudice components in any order and need not

address both if a defendant fails to make a sufficient showing of one. See Strickland, 466 U.S. at

697. Failure to establish either prong of the Strickland standard will result in a denial of Petitioner's

Sixth Amendment claims.  Id.  The Strickland test qualifies as "clearly established Federal law, as

determined by the Supreme Court" under AEDPA, and must be applied in reviewing an ineffective-

assistance claim. See Williams v. Taylor, 529 U.S. 362, 363 (2000).

Finally, a claim of ineffective assistance "must be reviewed from the perspective of counsel at the time." Duvall v. Reynolds, 139 F.3d 768, 777 (10th Cir. 1998) (quoting Porter v. Singletary, 14 F.3d 554, 558 (11th Cir. 1994)).  Every effort must be made by a reviewing court to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Strickland at 689.

### Claims Raised on Direct Appeal

Only two of the ineffective assistance of trial counsel claims in this habeas matter were raised by Petitioner on direct appeal: (1) trial counsel's failure to cross-examine witnesses regarding the victim's drug activity; and (2) trial counsel's failure to object to flawed second stage jury instructions. The OCCA relied on Strickland v. Washington, 466 U.S. 668 (1984), and Lockhart v. Fretwell, 506 U.S. 364 (1993) (prejudice component of Strickland focuses on whether counsel's deficient performance renders trial result unreliable or fundamentally unfair), and denied relief. Welch, 968 P.2d at 1251-53. Because the state appellate court reviewed these two issues on the merits, this Court shall apply AEDPA standards to determine whether the court's decision was contrary to or an unreasonable application of clearly established federal law, or a misapplication of the facts to such law. 28 U.S.C. § 2254(d)(1)&(2).

### Claim #1 - Failure to cross-examine witnesses regarding victim's drug activity

First, Petitioner complains that his trial counsel was ineffective for failing to reveal the victim's history of drug activity through cross-examination of the victim impact witnesses during second stage and cross-examination of Detective Pendley in the first stage proceedings. He asserts that his counsel should have brought the victim's connections to illegal drug activity to the attention

of the jury.  The OCCA concluded that these actions were strategic decisions and did not constitute

deficient performance by Welch's trial counsel:

> In his twelfth assignment of error, Appellant contends he was denied the effective assistance of counsel by trial counsel's failure to cross-examine the victim impact witnesses on certain aspects of the victim's character, specifically that he was a convicted drug dealer. Appellant also claims counsel was ineffective by failing to cross-examine into that same area during the first stage testimony of Detective Pendley and to otherwise bring this evidence before the jury.

> Trial counsel is presumed competent to provide the guiding hand that the accused needs, and therefore the burden is on the accused to demonstrate both a deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1084). *Strickland* sets forth the two-part test which must be applied to determine whether a defendant has been denied effective assistance of counsel.
> . . .
> In the present case, apart from a reference to an "NCIC" report in the original record, there is nothing in the record to indicate the victim had been convicted of any crime, including a drug crime. Further, Appellant's defense was that of self-defense, specifically denying the use of any involvement with drugs. He testified that while co-defendant Conover was visiting the Davises he just happened to remember that the victim lived next door and went over to talk to him about tattoos. During their conversation, the victim suddenly attacked and Appellant was forced to defend himself. To introduce evidence that the victim was involved with drugs would have only weakened Appellant's defense of self-defense in light of the evidence showing Appellant had been looking for drugs prior to arriving at the victim's home. Further, if evidence had been presented that the victim had drugs and drug paraphernalia in his home at the time of the murder, it would only have served to strengthen the State's theory that Appellant killed the victim when he failed to provide the drugs. Based upon this record, counsel's failure to introduce any evidence in the first stage of trial concerning the victim's involvement with drugs appears to have been a strategic decision.
> . . .
> Further, any failure to bring out evidence of the victim's involvement with illegal drugs during the second stage of trial was also a strategic decision. While victim impact witnesses are subject to the same rules of cross-examination as other witnesses, the decision to cross-examine relatives of the victim on negative aspects of the victim's character is a matter best left to trial counsel who observes the witnesses and jury first hand. The pursuit of such an issue could have a devastating effect on the Appellant's plea for a sentence of less than death. The failure to obtain explicit admissions from the victim impact witnesses did not deny Appellant a reliable sentencing proceeding.

Welch, 968 P.2d at 1252-53. Petitioner asserts that the OCCA "failed to apply Strickland reasonably." Dkt. # 15 at 119-20. However, Petitioner does not support this conclusory statement with factual or legal argument. He speculates, however, that testimony about the victim's drug history would have raised a reasonable doubt in the jury's mind regarding Petitioner's intent. Petitioner fails to address the OCCA's observation that, "Appellant's defense was that of self-defense, specifically denying the use of any involvement with drugs." Welch at 1252. Petitioner has failed to convince this Court that his trial counsel was constitutionally ineffective for failing to elicit testimony from either the victim impact witnesses or Detective Pendley regarding the victim's drug activities. He has not shown that his counsel committed serious errors in light of prevailing professional norms, or that any such errors were so serious as to deprive Petitioner of a fair trial.  Strickland, 466 U.S. at 687. The OCCA correctly set out the applicable federal law,[23] and analyzed the facts according to that law. The Court cannot find the appellate court's decision was contrary to or an unreasonable application of Strickland or its progeny, or that it was a misapplication of the facts to that law. 28 U.S.C. § 2254(d)(1)&(2). Relief is therefore denied on this issue.

---

[23]    The Court notes that the OCCA improperly referenced Lockhart v. Fretwell, 506 U.S. 364 (1993), in its preliminary discussion of standards to be considered in addressing the prejudice prong of the Strickland standard. In its analysis of Petitioner's claim, however, the OCCA did not rely on, or apply, the more restrictive Lockhart standard. Having decided Petitioner's claim did not establish deficient performance by counsel, the OCCA did not address the prejudice prong in its analysis or conclusion. See Short v. Sirmons, 472 F.3d 1177, 1196 (10th Cir. 2006) (discussing OCCA's reliance on Strickland and Lockhart standards).

Claim #2 - Failure to object to flawed jury instructions

As to Petitioner's claim that his trial counsel failed to object to flawed second stage jury instructions, the OCCA concluded that, "[A]s discussed in Proposition X, the instructions given to the jury on the aggravating circumstances of 'especially heinous, atrocious or cruel' and 'continuing threat' did not deny Appellant a reliable sentencing hearing. Therefore, counsel's failure to object to these instructions did not prejudice Appellant." Welch, 968 P.2d at 1253. This Court agrees. The appellate court's decision was not contrary to or an unreasonable application of clearly established federal law, or a misapplication of the facts to the law. Although the OCCA did not specifically cite Strickland, its conclusion that Petitioner was not prejudiced because he was not denied a "reliable sentencing" was not contrary to or an unreasonable application of Strickland.[24] Habeas relief shall be denied on this issue.

*Claims raised in post-conviction proceedings*

The record reflects that Claim ## 3 and 4 were first raised by Petitioner in his post-conviction application. The OCCA rejected them as being waived or barred by *res judicata*. Welch, 972 P.2d at 29.

Claim # 3 - Failure to challenge improper voir dire

As discussed earlier, Petitioner alleged in proposition seven that the prosecutor improperly asked prospective jurors during *voir dire* if a history of alcohol and drug abuse and a deprived and turbulent background would justify a sentence of less than death. He claims his trial counsel should have objected to, or challenged, the prosecutor's *voir dire*. In this tenth proposition, Petitioner is

---

[24]     Even though the OCCA based its conclusion on this issue on lack of prejudice to Mr. Welch, the state appellate court correctly did not consider or apply the restrictive "fundamental fairness" requirement set forth in Lockhart and discussed earlier in its direct appeal opinion.

claiming his appellate counsel was constitutionally deficient for failing to assert ineffective assistance of trial counsel on this issue in Petitioner's direct appeal proceedings. This issue was not raised on direct appeal and was denied on procedural grounds in Petitioner's post-conviction proceedings. The merits of Petitioner's ineffective assistance of appellate counsel claim on this issue have been addressed in the section above regarding prosecutorial misconduct.[25]  As noted above, the Court finds Petitioner has failed to establish that appellate counsel performed deficiently and Petitioner is not entitled to relief on this issue.

Claim # 4 - Failure to develop and present pertinent mitigating evidence

In his next claim, Petitioner asserts that his constitutional rights were violated during the sentencing stage when his trial counsel failed to adequately prepare, investigate, and present available mitigating evidence. This issue was not raised on direct appeal, but was raised as "Proposition II" in Petitioner's post-conviction proceedings. See Application for Post-Conviction Relief, filed January 2, 1998, in Case No. PC-97-1486, at 12-19. The OCCA found that the issue was barred by *res judicata*, as ineffective assistance of trial counsel claims were raised on direct appeal. Welch, 972 P.2d at 28-9. Relying on state law, the OCCA observed that it would only consider an ineffective assistance of counsel claim for the first time on post-conviction if "it requires fact-finding outside of the direct appeal record." Id. at 29. The OCCA concluded that Petitioner's claim did not turn on facts or information unavailable at the time of his direct appeal. Id. The state appellate court also rejected Petitioner's argument that the failure of his appellate

---

[25]     The Court addressed the merits in response to Petitioner's claim of ineffective assistance of appellate counsel as "cause" for his procedural default. See section entitled "Prosecutorial misconduct (propositions 3, 7)."

71

counsel to raise the issue on direct appeal constituted ineffective assistance of appellate counsel. Id. at 30-31. In these habeas proceedings Respondent asserts that this claim is procedurally barred. Dkt. # 25 at 94. For the reasons stated below, this Court finds that this issue is procedurally barred from habeas review.

The first consideration for this Court is whether the state appellate court's decision was founded on an independent and adequate state procedural rule. "A state court finding of procedural default is independent if it is separate and distinct from federal law." Maes v. Thomas, 46 F.3d 979, 985 (10th Cir. 1995). A finding of procedural default is an adequate state ground if it has been applied evenhandedly "in the vast majority of cases." Id. (quoting Andrews v. Deland, 943 F.2d 1162, 1190 (10th Cir. 1991)). The state court's procedural bar was an "independent" ground because Petitioner's failure to comply with state procedural rules was "the exclusive basis for the state court's holding." Maes, 46 F.3d at 985. The question of whether the state procedural bar is "adequate" is more difficult when applied to an ineffective assistance of counsel issue.

When the underlying claim is ineffective assistance of counsel, the Tenth Circuit Court of Appeals has recognized that countervailing concerns justify an exception to the general rule of procedural default. Brecheen v. Reynolds, 41 F.3d 1343, 1363 (10th Cir. 1994) (citing Kimmelman v. Morrison, 477 U.S. 365 (1986)). The unique concerns are "dictated by the interplay of two factors: the need for additional fact-finding, along with the need to permit the petitioner to consult with separate counsel on appeal in order to obtain an objective assessment as to trial counsel's performance." Id. at 1364 (citing Osborn v. Shillinger, 861 F.2d 612, 623 (10th Cir. 1988)). In English v. Cody, 146 F.3d 1257 (10th Cir. 1998), the Tenth Circuit explicitly narrowed the

circumstances requiring imposition of a procedural bar on ineffective assistance of counsel claims first raised collaterally.  In English, the Circuit Court concluded that:

> Kimmelman, Osborn, and Brecheen indicate that the Oklahoma bar will apply in those limited cases meeting the following two conditions: trial and appellate counsel differ; and the ineffectiveness claim can be resolved upon the trial record alone.  All other ineffectiveness claims are procedurally barred only if Oklahoma's special appellate remand rule for ineffectiveness claims is adequately and evenhandedly applied.

Id. at 1264 (citation omitted).

After reviewing the record in the instant case in light of the factors identified in English, the Court concludes the OCCA's finding of a procedural bar is adequate to preclude federal habeas review.  At trial, Petitioner was represented by Joe P. Robertson. On appeal, Petitioner was represented by David Autrey.  For purposes of the first requirement identified in English, the Court finds that Petitioner had the opportunity to confer with separate counsel on appeal. Also, the Court finds that Petitioner's allegations supporting his ineffective assistance of trial counsel claim in this proposition can be readily discerned in the trial record alone.  Accordingly, the Court finds that in this case, the procedural bar imposed by the OCCA on Petitioner's claim of ineffective assistance of trial counsel was based on state law grounds adequate to preclude federal review.[26] As a result, the ineffective assistance of trial counsel claim relating to mitigating evidence shall be denied on the basis of the procedural default doctrine unless Petitioner demonstrates "cause and prejudice"

_____

[26]    The Court need not address whether Oklahoma's procedural rules are adequately and evenhandedly applied because Petitioner does not address his alleged procedural default, let alone challenge the adequacy of Oklahoma's procedural rules. See Spears v. Mullin,, 343 F.3d 1215, 1252 (10th Cir. 2003); Hooks v. Ward, 184 F.3d 1206, 1215 (10th Cir. 1999) (concluding it is habeas petitioner's burden to challenge the adequacy of a state procedural bar).

or a "fundamental miscarriage of justice" to excuse his procedural default of the claims.  <u>Coleman</u>, 501 U.S. at 750; <u>Maes</u>, 46 F.3d at 985.

As discussed above, in the situation where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner" can show either "cause and prejudice," or, alternatively, a "fundamental miscarriage of justice." <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991).  Hence, unless Petitioner can show that either the "cause and prejudice" or  "fundamental miscarriage of justice" exception to the procedural bar rule is applicable, the Court will not adjudicate the merits of this claim.  <u>See</u> <u>Coleman</u>, 501 U.S. at 750.

Petitioner argues ineffective assistance of appellate counsel as the cause for his procedural default. In order for appellate counsel's ineffectiveness to constitute "cause" sufficient to excuse a state prisoner's procedural default,  the assistance provided by the appellate counsel must rise to the level of a constitutional violation.  <u>Murray v. Carrier</u>, 477 U.S. 478, 488-89 (1986). The Court will first examine the merits of the omitted issue. If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance. <u>Parker v. Champion</u>, 148 F.3d 1219, 1221 (10th Cir.1998). If the issue has merit, the Court then must determine whether counsel's failure to raise the claim on direct appeal was deficient and prejudicial.  <u>Hawkins v. Hannigan</u>, 185 F.3d 1146, 1152 (10th Cir. 1999); <u>see also</u> <u>United States v. Cook</u>, 45 F.3d 388, 394 (10th Cir. 1995).  The relevant questions for assessing Petitioner's claim of ineffective assistance of appellate counsel are whether appellate counsel was "objectively unreasonable" in failing to raise the omitted claim on appeal and, if so, whether there is a "reasonable probability that, but for his counsel's unreasonable failure" to raise the claims, Petitioner "would have prevailed on his

appeal." <u>Neill v. Gibson</u>, 278 F.3d 1044, 1057 (10th Cir. 2001) (citing <u>Smith v. Robbins</u>, 528 U.S.

259, 285-86 (2000) (applying <u>Strickland</u>, 466 U.S. at 687-91)).

In the case at hand, Petitioner's underlying claim is that his trial counsel failed to investigate

and present available mitigating evidence. He asserts that investigator Fran St. Peter could have

testified about Petitioner's history of child abuse, mental illness in the family, and paranoid traits.[27]

He also claims that other available materials, such as reports from juvenile authorities, were not

presented to the jury.

Review of the record reveals that Petitioner's attorney presented the following witnesses

during the second stage of Petitioner's trial:

1.     Dr. Phil Murphy - Dr. Murphy, a licensed clinical psychologist, testified that he had administered personality tests, cognizance tests, and neuropsychological screens to Petitioner, in addition to consultations with Mr. Welch. Dr. Murphy testified in detail about the areas of dysfunction he found in Petitioner, including brain damage caused by an extensive history of drug abuse. He testified about Petitioner's family history and its effect on Petitioner's behavior. He also opined how a prison environment could be beneficial to someone with brain damage and psychosis such as the type suffered by Mr. Welch.  Tr. Trans. Vol. 9 at 2142-53.

2.     Michael Shuck - Mr. Shuck testified that he had been a friend of Mr. Welch since childhood. He was aware of Petitioner's drug use, allowed Petitioner to stay with him during some difficult times, trusted Petitioner with his children, and would continue to be Petitioner's friend even though he had been convicted of this serious crime. Tr. Trans. Vol. 9 at 2160-68.

3.     Janet Welch - Petitioner's wife testified that Petitioner's "whole personality" changed when he was drunk or on drugs. She testified that, when he was sober, you "couldn't ask for a better person." She indicated that a structured environment where Petitioner could not get drugs or alcohol would benefit Petitioner. Tr. Trans. vol. 9 at 2171-75.

---

[27]     Ms. St. Peter, a clinical social worker from Austin, Texas, testified at a June 9, 1995, hearing on Petitioner's pretrial motion for continuance in order to allow further psychological evaluations of Petitioner. The motion was denied. Tr. Trans. Vol.1 at 216-28.

  4. Alice Welch - Petitioner's mother testified how Petitioner's behavioral problems began around the age of thirteen, that she was contacted by the school and social workers about his problems, and that he was sent to reform school for a period of time. Tr. Trans. Vol. 9 at 2179-88.

Petitioner now argues that Ms. St. Peter should have been called to "buttress or complement" the findings of Dr. Murphy, and that her additional testimony would have revealed a history of child abuse, mental illness in the family, and paranoid traits. Dkt. # 15 at 122-23.

  According to the Tenth Circuit Court of Appeals,

> "The sentencing stage is the most critical phase of a death penalty case. Any competent counsel knows the importance of thoroughly investigating and presenting mitigating evidence." Romano v. Gibson, 239 F.3d 1156, 1180 (10th Cir. 2001). To perform adequately in a capital case, trial counsel must undertake "'to discover *all reasonably available* mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor.'" Wiggins v. Smith, 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases 10.7(A) (2003) [hereinafter 2003 Guidelines]. Counsel should consider, *inter alia,* medical history, educational history, social and family history, religious and cultural influences, and employment. *See* 2003 Guidelines 10.7, Commentary.

Anderson v. Sirmons, 476 F.3d 1131, 1142 (10th Cir. 2007). In the Anderson case, the Circuit Court concluded that Anderson's trial counsel did not present adequate information to the jury to offer a potential explanation for his actions relating to the murders in which he participated. Finding that Anderson's counsel presented only a "skeletal case" in mitigation, the Court concluded that there was "a reasonable probability that but for trial counsel's deficient performance, the outcome of the penalty phase would have been different." Id. at 1145-46.

  Contrary to Anderson, Petitioner's counsel here presented more than a skeletal case in mitigation. Dr. Murphy's testimony provided substantial information about Petitioner's psychological problems and their possible causes from his background. Petitioner's mother provided insight into Petitioner's childhood behavioral problems, and all witnesses indicated that

they believed many of his problems were directly related to drug and/or alcohol abuse. While an attorney has an affirmative duty to conduct an investigation of potential mitigation evidence, that duty is not boundless. <u>Brecheen v. Reynolds</u>, 41 F. 3d 1343, 1366 (10th Cir. 1994). Based upon the facts as they appear from the trial court records, as well as the speculative and possible cumulative nature of the evidence now proposed by Petitioner, this Court cannot say counsel's conduct fell outside the wide range of "reasonable professional assistance" which would render Petitioner's trial fundamentally unfair. There can be no doubt that trial counsel is free to exercise his professional judgment in trial strategy decisions. This Court will not engage in the type of hindsight forbidden by <u>Strickland</u>. Based upon the specific facts of this case, this Court finds defense counsel's strategy at the sentencing hearing was not unreasonable. Accordingly, the Court finds Petitioner has failed to establish trial counsel's actions fell below the required level of competency, and appellate counsel was not ineffective for failing to raise the issue on direct appeal. Petitioner has not demonstrated cause for his procedural default. Further, he has not argued fundamental miscarriage of justice as an excuse for his procedural default. The Court finds that Petitioner is procedurally barred from obtaining habeas corpus relief on this claim of ineffective assistance of counsel.

## XI.    Cumulative error (proposition 11)

Petitioner next contends the cumulative impact of errors resulted in "a constitutionally unreliable conviction and death sentence." Dkt. # 15 at 126. Petitioner exhausted this claim by asserting cumulative error on direct appeal. The OCCA denied relief because the trial errors it recognized were harmless and did not warrant reversal. This Court has reviewed the constitutional errors found by the OCCA, but has found no additional errors.  The errors reviewed were harmless or non-prejudicial. Cumulative error analysis "merely aggregates all the errors that individually

have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." Hamilton v. Mullin, 436 F.3d 1181, 1196 (10th Cir. 2006) (internal quotations omitted). Having found no additional constitutional errors, this Court will review the OCCA's decision only under the deferential AEDPA standard.  See Short v. Sirmons, 472 F.3d 1177, 1197 (10th Cir. 2006). The court cannot find under the facts of this case that the cumulative effect of the errors found deprived Petitioner of a fair trial. See Newsted v. Gibson, 158 F. 3d 1085 (10th Cir. 1998); Moore v. Reynolds, 153 F. 3d 1086 (10th Cir. 1998); United States v. McKneely. 69 F. 3d 1067, 1080 (10th Cir. 1995). The OCCA's denial of Petitioner's claim based on cumulative error was not an unreasonable application of Supreme Court law. Petitioner is not entitled to relief on this claim.

## XII.    Petitioner is or will become incompetent to be executed (proposition 12)

Mr. Welch raises this issue acknowledging that it is "not ripe for review." Dkt. # 15 at 129-30;    Dkt. # 28 at 45 ("It is agreed that Proposition 12 is premature at this time."). Ford v. Wainwright, 477 U.S. 399, 409-10 (1986), holds that the "Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane." The determination of whether an inmate is competent to be executed, however, cannot be made before the execution date is imminent, i.e., before the warrant of execution is issued by the state. See Herrera v. Collins, 506 U.S. 390, 406 (1993) (finding "the issue of sanity is properly considered in proximity to the execution."). Petitioner's execution date is not imminent. Thus, his competency claim is premature.

**XIII.   Evidentiary hearing**

In his request for relief (Dkt. #15 at 131) Petitioner asks for an evidentiary hearing "as to the Petition as a whole and in particular as to any issues which involve facts not apparent from the existing record" and "to any issues which involve facts disputed by the State." <u>Id.</u> As the disposition of Petitioner's habeas corpus petition does not require reference to any materials beyond those that are available and currently before the Court, this Court finds that there is no need for an evidentiary hearing in this case. There are no disputed factual questions remaining that could possibly entitle Petitioner to habeas corpus relief. Petitioner has failed to demonstrate the need for an evidentiary hearing under either 28 U.S.C. § 2254(e)(2) or any other governing principle of law. <u>Williams v. Taylor</u>, 529 U.S. 420 (2000). Accordingly, Petitioner's request for an evidentiary hearing is denied.

**ACCORDINGLY IT IS HEREBY ORDERED** that:

1.      Marty Sirmons is substituted for Gary Gibson as the party Respondent and the **Court Clerk is directed** to note such substitution on the record.

2.      The petition for writ of habeas corpus (Dkt. #15) is **denied**.

**DATED** this 26th day of March, 2007.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

79